RICHARD S. BRADEN et al., Plaintiffs-Appellees, v. STEFFEN R. WEINERT et al., Defendants-Appellants.

Third District    No. 80-635

Opinion filed July 10, 1981.

Bruce A. Buckrop, of Andalusia, for appellants.

Samuel McHard, of Katz, McAndrews, Durkee & Telleen, of Rock Island, for appellees.

Mr. JUSTICE ALLOY delivered the opinion of the court:

Defendants Steffen Weinert and Judith Weinert appeal from that portion of the judgment in this forcible entry and detainer action wherein the court ordered them to pay compound interest on certain unmade payments under a contract for sale of real estate. They also appeal from the court's imposition of restrictive covenants upon their property. The plaintiffs Richard and Patricia Braden filed a cross-appeal, arguing error in the court's denial of their prayer for immediate possession of the property, based upon the Weinerts' forfeiture.

The facts as found in the record of this small-claims action are largely undisputed. In 1966, Ruby Penny entered into a land contract with Jerry and Jane Brown, as joint tenants, for the sale of 120 acres of property. Subsequent thereto, the Browns, in June 1971, entered into a land contract with the Weinerts, whereby they sold, on a contract, a 5.21-acre parcel of land, designated Lot 5 in Brown's Subdivision, which property was part of the original 120 acres the Browns had purchased from Penny, on a contract. The Weinerts made payments on the contract to the Browns from the date of purchase until April 1975. Those payments were made to

the Browns' account at the Bank of Viola. In April 1975 the Browns filed for bankruptcy. The land was disclaimed by the trustee in bankruptcy. The Browns, in April 1975, told the Weinerts to cease making their payments on the contract for sale of Lot 5 in Brown's Subdivision. Thereafter, in January 1976, with the permission of Ruby Penny, Richard and Patricia Braden acquired all of the Browns' interest in the 120 acres which had formed the basis for the contract for sale between Penny and the Browns.

As a result of uncertainty due to legal insufficiencies and complications arising from the Browns' handling of the property, the Bradens needed time to "straighten things out." Largely because of this, the Bradens, successors to the Browns, never informed the Weinerts to resume monthly payments to them under the contract for sale of their Lot 5. Neither did they ever demand payments on the contract. In the interim, the Weinerts continued to occupy and farm Lot 5. In addition, the parties entered into a share crop arrangement for farming of the Bradens' lands for the years 1976 and 1977. In the summer of 1977, according to Mr. Weinert's testimony, he asked Mr. Braden when things would be straightened out, to which Braden replied that it would be as soon as they finished surveying the other property and getting the legal work done. The Bradens desired to subdivide the land they were buying from Penny.

Then, in December 1978, without prior request or demand for payments on the contract with the Weinerts, the Bradens served on the Weinerts a 30-day notice, which informed them that they were in default on their contract with the Browns. The notice demanded payment of $22,899.66, which represented the entire balance due on the contract, in addition to the Weinerts' alleged share of the costs of removing liens from the property, in anticipation of the subdivision. In response to the notice, the Weinerts tendered to the Bradens a payment of $4,710.15, representing the payments which were due on the contract, but had not been made, from April 1975 to that time. The tender was refused by the Bradens as inadequate.

Thereafter the forcible entry and detainer action was instituted in the small claims division. The trial court found that the Bradens had acquired the interests of the Browns in the real estate, subject to Weinerts' contractual interests, as set forth in their contract for the sale of Lot 5 with the Browns. The court found that the Bradens had acquired their interests from the Browns, knowing that the Weinerts occupied a portion of the premises and knowing of the contractual relationship between the Weinerts and the Browns. The court also found that the Bradens did not direct the Weinerts to resume making payments on the contract. As to the alleged forfeiture, the court concluded that enforcement of the forfeiture would not be granted, because the Weinerts had not, under the factual

circumstances in the record, evidenced their intent to abandon the property by their failure to make payments. The court, therefore, denied the prayer for possession, premised upon the condition that the Weinerts pay to the Bradens all sums due under their contract, including the interest on payments as they would have become due, from April 1975 to that date of judgment.

By subsequent order, the court also found that the Weinerts had agreed, by stipulation of counsel, to a change in the legal description of the subject real estate, changing the designation of the property from Lot 5 in Brown's Subdivision to Lot 20 in Timber Ridge Estates, the Bradens' subdivision. Pursuant to that stipulation, the court also ordered that the Weinerts take Lot 20, as a substitute, subject to the subdivision plat for Timber Ridge Estates and the restrictive covenants therein and on record. The court further ordered that the Weinerts were to pay the Bradens compound interest on the missed payments, from April 1975 to date of judgment.

The Weinerts appeal from the order insofar as it orders them to pay compound interest on the delayed payments and insofar as it orders them to take Lot 20 of Timber Ridge Estates subject to the subdivision plat and the restrictive covenants contained therein. The Bradens, by cross-appeal, appeal from the court's order denying them possession, based upon the Weinerts' alleged forfeiture.

■■ We proceed initially to the issues raised by the cross-appeal. In arguing that the court erred in denying them possession, based upon a forfeiture, the Bradens assert that the forfeiture occurred due (1) to the Weinerts' breach of certain county zoning building restrictions and due (2) to their abandonment of the contract, as evidenced by the failure to make payments on the contract. As to the first ground, being alleged violations of the county zoning laws, while those allegations were made in the notice and the declaration of forfeiture, they were denied by the answer of the Weinerts to the Bradens' statement of facts. Furthermore, no evidence was offered at trial on the issue of the alleged violations, nor was the issue argued at trial. Neither was the issue raised in the Bradens' post-trial motion. Since the Bradens did not pursue this issue at trial as a basis for the forfeiture, it is waived and not properly before us on this appeal. *People ex rel. Wilcox v. Equity Funding Insurance Co.* (1975), 61 Ill. 2d 303, 312-13, 335 N.E.2d 448.

As to nonpayment basis of the forfeiture, the rules were amply set forth by this court in *Aden v. Alwardt* (1979), 76 Ill. App. 3d 54, 59-61, 394 N.E.2d 716:

> "It is a long-established rule that where a forfeiture has been declared in the manner prescribed in the contract, a court will give effect to it. [Citations.] However, it is equally well established that

courts of equity abhor forfeitures and will enforce them only where the right to forfeiture is clearly and unequivocally shown and injustice will not result. [Citations.] Essentially what is required is a balancing of the equities involved in the case.

'The principal factors considered significant in granting relief from forfeitures appear to be: The prior acceptance of late payments and whether the buyer has been given a reasonable warning that the seller will insist on prompt payment in the future [citations]; the length of time involved in the delay and whether the default has been repeated [citation]; whether substantial payment has been made on the whole contract [citation]; whether the purchaser has substantially improved the property [citation]; and whether there has been a mere delay rather than a suspension of the payments [citations].' [Citation.]

Also significant is whether the purchaser's failure to meet the contract's requirements was wilful and, most importantly, whether the seller will receive the full benefit of her bargain if specific performance is granted. [Citations.]

\* \* \*

'When, in effect, the seller has not been deprived of the general object of the sales agreement, equity has considered time of performance to be a mere formal defect which may be corrected by payment of the contract balance with interest. [citations].' [Citation.]

\* \* \*

'[F]orfeitures are not favored by courts of equity and parties will be protected against them wherever wrong or injustice will result from their enforcement. It is especially well settled that where the agreement is simply one for the payment of money, a forfeiture of land incurred by the nonperformance of the agreement will be set aside on behalf of the defaulting party or relief will be granted in any other manner made necessary by the circumstances of the case, on the payment of the debt, interest and costs, unless complainant has debarred himself by his own conduct.' [Citation.]"

■■ In the instant case, the evidence indicates that the Weinerts had made a $1,500 downpayment and had made 44 payments on the contract to the Browns. Then, in April 1975, they were directed by the contract sellers, the Browns, to stop making payments on the contract, due to the impending bankruptcy. They did so and did not resume payments when, some months later, the Bradens acquired the Browns' interest in the

contract. The hiatus in payments lasted almost three years thereafter. However, during that time the Bradens did not request or demand resumption of the payments on the contract. Braden did testify that he told Weinert to continue to make payments to the Bank of Viola, in order not to have to make a large payment when things were straightened out. However, the court found that such was an insufficient request, since it would have been unreasonable for the Weinerts to make payments to the Browns' account at the Bank of Viola, after the bankruptcy and after the Browns had relinquished rights under the contract. We agree. Thus, as regards payments, the Weinerts were informed to cease making payments and were not told to resume them. There was no insistence by the Bradens on prompt payment, or on any payment, from the time they acquired the Browns' interests in January 1976 through November 1978. The cessation in payments on the contract was at the direction of the contract seller, initially, which direction was not changed by the Bradens, as successors to that seller. The delay in payments was not the voluntary act of the Weinerts and can in no way be considered wilful.

■■ When they were first requested to make the payments, by the 30-day notice, in December 1978, they promptly tendered the full amount of bank payments due under the contract from April 1975. The court properly found, under these circumstances, that the evidence did not establish the requisite intent on the part of the Weinerts to abandon the contract. The balance of the equities clearly favored the Weinerts and militated against the enforcement of the forfeiture, if, indeed, a forfeiture had occurred. Given these facts, the cases cited by the Bradens in support of a forfeiture are clearly distinguishable. As to the final question, whether the Bradens will receive the full benefit of the bargain if the forfeiture is not declared, it is evident that they will. The Weinerts have been ordered to make the back payments and to reimburse the Bradens for back taxes and a proportionate share of expenses in removing liens on the property. The Bradens assert that they have expended large sums of money in developing their subdivision and that the investment will be lost if the Weinerts are permitted to remain on the property. However, it needs to be noted that the benefits to them from their subdivision development have no relevance to the question of the benefits they are to receive under the contract for sale with the Weinerts, which contract is the focus of the forfeiture action. That enforcement of the contract will impede their plans for development does not establish that they will not receive the benefits of the contract for sale. The benefits under the contract are the payments. They will receive those, as the court directed.

■■ As to the problems with the subdivision vis-a-vis the Weinert property, it must be noted that the Weinerts purchased their property on the contract in 1971 and took possession and began their farming operation.

This was some seven years prior to the time the subdivision plans were finalized. At the time of the proposed subdivision, the Bradens were aware of the Weinert contract and award of the established farming operations on the property. Clearly, under the circumstances, the equities all favor the Weinerts. We find no error in the court's refusal to grant possession to the Bradens. That the Weinerts did not tender the full amount demanded in the 30-day notice did not terminate the contract so as to provide a basis for forfeiture. The Weinerts promptly tendered the amount of back payments that were due from April 1975. The accelerated balance, under the contract, was not due, given the circumstances, and therefore there was an insufficient basis to declare a forfeiture based upon the failure to meet the demand of the notice.

We next address the issues raised by the Weinerts on their appeal. The court ordered that they take Lot 20 of Timber Ridge Estates as a substitute for Lot 5 of Brown's Addition, subject to the restrictions imposed on Lot 20 by the subdivision plat. According to the court, this was by stipulation of the parties. The Weinerts argue that they never agreed to such a substitution. They argue that they only agreed to a substitution of a mere legal description in the deed and contract, and not to the subjection of the property to the restrictions imposed by reason of the subdivision plat for Timber Ridge Estates. They point out that those restrictions are not similar to the restrictions under which they purchased their property in 1971, as Lot 5 of Brown's Subdivision, and that imposition of the restrictions would operate to prevent them from continuing their farming operations on the property. The restrictive covenants at issue would prevent them from raising domestic animals and from using their property for the storage of feed and farm equipment, which uses had been made of the property for the years prior to the Bradens' purchase and subdivision plans.

We have carefully reviewed the record on this question and it indicates that the Weinerts did not agree to the imposition of the restrictive covenants associated with Timber Ridge Estates. The record indicates that near the end of the hearing in the trial court, counsel for the Bradens presented a plat survey of Lot 20 in Timber Ridge Estates. He stated that there was a stipulation that Lot 20, as shown on the survey plat, was essentially the same lot as Lot 5 in Brown's Subdivision. He also indicated that it was stipulated between the parties that in the event the court determined that the Weinerts had contract rights for Lot 5, they would accept Lot 20 as the new legal description, in place of Lot 5. Counsel for the Weinerts agreed. The court was delighted, indicating that the result would be that if the Weinerts were determined to have contract rights, then the court would be, "in essence, reforming the contract and saying that the Bradens took subject to the Weinerts' interest to determine

how much they still owe, and now insert Lot 20 in the legal description." Nowhere in the record is it indicated that the Weinerts, in stipulating to a substitution of legal descriptions in the contract, ever intended to assent or did assent to the imposition of the restrictive covenants imposed upon Lot 20 by the subdivision plat. The focus of the stipulation discussion in the record was a substitution of legal descriptions only. The single document before the court and the parties at the time of the stipulation of record was the plat survey of Lot 20. That document was completely silent with respect to any restrictive covenants or other restrictions upon Lot 20. Furthermore, as indicated, nowhere in the discussion was the issue of restrictions raised. It is worthy of note, too, that the plat survey which was the focus of the stipulation included within it designations for buildings used in the farming operation, including the pole barn, the hog shed, another shed, a metal shed, and a farrow house. If any implication were to be drawn from that survey document, it would have to be that such improvements and uses as were therein shown, and the occupation they supported, would continue on the land, despite the substitution of legal dscriptions in the contract and deed. Given the record, we cannot conclude that there was a stipulation by the Weinerts that they would exchange their Lot 5, without the restrictions in use as to farming, for Lot 20, with its full restrictions in such use.

The only indication in the record is a stipulation that they would accept a substitution of Lot 20 in the legal description, but not a change in the uses which they had previously made on the property. It is worth emphasizing that the Weinerts had been farming the property and raising livestock. The Bradens wanted to subdivide the surrounding land and felt it necessary to prevent the continuance of the farming operation by the Weinerts, in order to successfully promote their subdivision plans. The Weinerts wanted to continue using their property as they have previously, purposes the Bradens had concurred in to some degree through their crop share arrangement with the Weinerts in 1976 and 1977. We conclude, on the basis of the record, that the court's conclusion that the Weinerts stipulated to an imposition of Timber Ridge Estates' restrictive covenants on their property is not justified by the record. The order as to such stipulation is reversed. The Weinerts have the same rights under the contract, and are subject to the same restrictions on the property, as they originally bargained for in 1971, regardless of the redesignation of the property as Lot 20 in Timber Ridge Estates in the contract and deed.

The final issue is whether the court erred in requiring the Weinerts to pay compounded interest, at 7%, on the back payments. Such award of compound interest was in addition to the requirement that they pay the principal and interest, as specified in the contract. In support of their assertion of error, they argue that they were informed to cease making

payments by their contract seller and that they were never requested, by successor seller, to resume those payments. They also argue that the Bradens should not receive compound interest on those payments which were due prior to the time they acquired the Browns' interest under the contract, nor upon those payments due from January 1979 to October 1980, during which time they refused the Weinerts' tender of monthly payments. They point out that the contract itself makes no provision for such compound interest on late payments.

Interest on debts may only be recovered on the basis of the contract of the parties or by statute. (*Haas v. Cravatta* (1979), 71 Ill. App. 3d 325, 330, 389 N.E.2d 226.) The applicable statutory section is section 2 of the Interest Act (Ill. Rev. Stat. 1979, ch. 74, par. 2):

> "Creditors shall be allowed to receive at the rate of five (5) per centum per annum for all moneys after they become due on any bond, bill, promissory note, or other instrument of writing; * * *."

In the instant case the question becomes whether the payments not made, from April 1975 to the date of judgment, were moneys due on the contract, such that a creditor-debtor relationship with respect to the payments existed between the Bradens and the Weinerts. While under the strict terms of the contract the moneys were due, and interest would seem to be applicable under the statute, there is, in this case, the intervening circumstance of the sellers' direction to the Weinerts, in April 1975, to cease making the payments. Thus, the seller, the Browns, in 1975, directed the cessation of payments under the contract. As such, there were no longer moneys presently due under the terms of the contract. The contractual requirement of monthly payments had been waived by the contract seller. A waiver is the intentional relinquishment of a known right, and to find waiver there must be both knowledge of the existence of the right and an intention to relinquish it. (*Pantle v. Industrial Com.* (1975), 61 Ill. 2d 365, 372, 335 N.E.2d 491.) Here the Browns obviously knew of the contractual rights with regard to prompt payment and evidenced their intention to relinquish it by directing the Weinerts to cease making such payments. Furthermore, that waiver of the right to payment continued thereafter, when the Browns' successors in interest under the contract, the Bradens, failed to direct or request a resumption of prompt payments, under the strict terms of the contract. *Rose v. Dolejs* (1953), 1 Ill. 2d 280, 290-91, 116 N.E.2d 402.

■■ When a demand by the sellers was finally made, in December 1978, the Weinerts made a tender of the prior payments due under the strict terms of the contract and indicated their willingness to begin monthly payments, as per the contract. Because of the actions by the original contract sellers and their successors in interest, in waiving payment as under the contract, the moneys were not due on the contract at the

monthly intervals specified therein. Therefore, as to the payments speci-
fied in the contract between April 1975 and December 1978, the requisite
debtor-creditor relationship was not in existence so as to support an
award of statutory interest. Neither is statutory interest appropriately
awarded for payments due from January 1979 through October 1980,
since those payments were refused by the sellers. Since the contract
makes no provision for compounded interest and since the statutory
interest is not applicable, an award of compound interest, as ordered by
the court, is not proper. We find that the court erred in its award of
compound interest to the Bradens.

The decision of the circuit court refusing to enforce a forfeiture is
affirmed, and the decisions of the court, imposing restrictive covenants
set forth in the Timber Ridge Estates subdivision plat and awarding
compound interest, are reversed. The cause is remanded solely for the
purpose of a determination by the trial court of the amount of moneys
due from the Weinerts to the Bradens, consistent with the conclusions as
expressed in this opinion.

Affirmed in part and reversed in part, and remanded.

SCOTT, P. J., and BARRY, J., concur.