DONNA V. HARRINGTON *et al.*, Plaintiffs-Appellees, v. MICKEY KAY, a/k/a Rose Kagan *et al.*, Defendants (Kenneth R. Stevens, Defendant-Appellant).

First District (5th Division)   No. 83—2570

Opinion filed September 6, 1985.

George A. Cullen, Ltd., of Chicago (Sidney Z. Karasik, of counsel), for appellant.

Robert R. Kunkel, of Chicago, for appellees.

JUSTICE LORENZ delivered the opinion of the court:

Plaintiffs Donna Harrington and James Harrington brought this action for specific performance of a real estate contract for the sale of a multiple-unit apartment building to defendant-appellant Kenneth R. Stevens. Following trial, the circuit court entered judgment for plaintiff in the amount of $39,441.48.

Defendant Stevens has appealed, contending: (1) plaintiffs were not entitled to specific performance because they failed to establish that the sellers had tendered certain documents to Stevens as required by the contract; (2) the court erred in finding that defendant had waived his rights under a contractual provision in which the sellers warranted that they had received no notice of building code violations; (3) even if Stevens did waive strict compliance with the building code violation warranty he was still entitled to setoffs for the

costs of curing these violations; (4) the trial court erred in finding that there had not been a subsequent substitution of contract; (5) the plaintiffs' claim should have been barred by *laches*; (6) it was error to award prejudgment interest to the plaintiffs.

We affirm all but the prejudgment interest portion of the judgment, and remand the cause for an award of prejudgment interest based on simple interest rather than compound interest.

Plaintiff Donna Harrington and defendant Mickey Kay each owned a 50% beneficial interest in a multiple-unit apartment building held in a land trust by defendant Lawndale Trust & Savings Bank and located at 4878 North Magnolia Avenue in Chicago. Plaintiff James Harrington, Donna's father, was the building's manager and Mickey Kay's business partner. It is undisputed that Donna Harrington, Kay, and Stevens entered into a written agreement for Stevens to purchase the property for an effective price of $60,000 to be paid in monthly installments of $450 to be divided equally by Donna and Kay. Plaintiffs contended at trial that, although Stevens received an assignment of beneficial interest from Donna and took title and possession of the building, he never paid Donna any money. Stevens testified that because he discovered numerous building code violations in the building after signing the contract he orally renegotiated separate agreements with Donna and Kay, paying $5,000 in cash to Donna in return for the assignment of her beneficial interest to him. The trial court did not believe Stevens' testimony and awarded judgment on the contract to Donna. We will summarize any additional pertinent testimony and evidence as required in our discussion of appellant Stevens' arguments on appeal.

■ Stevens contends that plaintiffs are not entitled to specific performance because they failed to tender certain papers which Stevens contends were necessary to give him full ownership of the property. The written contract between the parties specified that the following documents were to be transferred: (1) a bill of sale for items such as screens, refrigerators and ranges contained in the premises; (2) a warranty deed or trustee's deed conveying clear title; (3) an affidavit of title; (4) either a duplicate certificate of title or a title insurance policy. however, on appeal the only specific documents that Stevens contends were not given to him are the bill of sale and a title insurance policy. Stevens has cited no authority suggesting that the omission of these documents affected his title. More importantly, Stevens' conduct following execution of the contract clearly establishes his waiver of this provision.

Parties to a contract have the power to waive provisions placed in

the contract for their benefit. (*Lempera v. Karner* (1979), 79 Ill. App. 3d 221, 223, 398 N.E.2d 224, 225.) Such a waiver may be established by conduct indicating that strict compliance with the contractual provision will not be required. (*Lempera v. Karner* (1979), 79 Ill. App. 3d 221, 223, 398 N.E.2d 224, 225.) Additionally, as held in *Kane v. American National Bank & Trust Co.* (1974), 21 Ill. App. 3d 1046, 1052, 316 N.E.2d 177, 182, an implied waiver of a legal right may arise when the conduct of the person against whom the waiver is asserted is inconsistent with any other intention than to waive it.

Shortly after this contract was signed, Stevens appeared in housing court and advised the court that he had assumed ownership of the building. In the trial court in this proceeding Stevens testified that he was the sole owner of the building and had invested about three-quarters of a million dollars in its repair and renovation. We find that these actions and statements by Stevens provide ample support for the trial court's determination that Stevens had waived all contractual provisions concerning delivery of documents relating to title.

Stevens also contends that the trial court erred in holding that Stevens had waived a contractual provision in which the sellers warranted that they had received no notice of any building code violations existing prior to the execution of the contract.

At trial Kenneth Stevens, who testified that he was the sole owner of the building, denied that James Harrington ever told him about code violations before the contract was signed on June 14. His first meeting with Harrington was in the building's office and lasted only 10 minutes. He testified that he did not recall looking at the building that long, although he did note the building's condition "wasn't good." Indeed, he believed it to be the worst building on the block. Stevens recalled next looking at the building at the end of May 1975. He inspected three apartments and three of the common areas for about 20 minutes, and also walked around the front of the building. Stevens noticed that the paint needed work, there was some missing glass, the carpeting was torn, and there were plaster problems, but at this time he was ready to buy the building.

According to Stevens, a tentative deal for $180,000 (actually $60,000 after allowing for the assumption of two mortgages) was struck on June 7. After some modifications were made, Stevens had a revised contract drafted and on June 14 gave it to James Harrington to have Donna sign it. At that time Mickey Kay signed the contract. Stevens testified that to this point James had never said anything about building code violations. However, he also testified that when he inspected the building before buying James Harrington affirma-

tively told him there were no building code violations.

Stevens testified that on June 16 or 17 he learned of the building code violations. He spoke to James by phone, who told him he (Harrington) had another buyer and Stevens had lost a good deal. But subsequently on June 26, at Stevens' home, they consummated a cash deal in which James Harrington gave Stevens an assignment of beneficial interest (signed by Donna Harrington on June 23 or 24 in Stevens' presence) in return for $5,000 that Stevens kept in a gun case. No receipt and no other instrument memorialized this transaction. According to Stevens he had previously negotiated a deal with Mickey Kay, who had been told by James Harrington to make her own deal.

Stevens testified that the building was not finally dismissed out of housing court until 1979. Some of the violations involved hazardous rear porches, broken glass, torn carpeting, and plumbing defects. He estimated that since 1975 he spent approximately $800,000 on repairs and renovations; the building in his estimation was worth $1.25 million to $1.75 million at the time of trial.

James Harrington testified that before he and Stevens agreed to a contract they met five or six times at the building. At the first meeting James showed Stevens "a few" of the 50 units. They discussed the building's problems, including code violations. One specific problem area discussed was the building's eight back stairs. According to Harrington, half of them were not completely constructed. In direct contradiction of Stevens' testimony, Harrington testified that at a second meeting he showed Stevens the list of the building's code violations which had been received from the city of Chicago. Stevens also inspected about 15 of the units. According to Harrington, at all the subsequent meetings before the contract was signed Stevens also went through the premises.

■■ ■ On appeal, Stevens contends that this testimony by James Harrington concerning precontract conversation should have been banned under the parol evidence rule. However, no such objection to this testimony was made at trial, and consequently Stevens has waived his right to assert this rule on appeal. (*Tolbird v. Howard* (1969), 43 Ill. 2d 357, 362, 253 N.E.2d 444, 447.) Stevens also contends that in any event this testimony did not establish his waiver of the warranty provision. James Harrington's testimony established that before the parties signed the contract containing the building code warranty, Stevens had actually been shown the list of building code violations received from the city of Chicago by James Harrington. Stevens himself testified that after the contract was signed,

he spent thousands of dollars to remedy code violations and generally repair the building. Stevens did not testify that he ever demanded reimbursement from the Harringtons for remedying the violations. Given this testimony, we do not find that the trial court's determination of waiver of the warranty provision was contrary to the manifest weight of the evidence. Stevens' knowledge of the code violations at the time of signing the contract and his failure to look to the Harringtons for reimbursement of repairs constitute conduct establishing a total waiver of this provision. (*Lempera v. Karner* (1979), 79 Ill. App. 3d 221, 223, 398 N.E.2d 224, 225; *Kane v. American National Bank & Trust Co.* (1974), 21 Ill. App. 3d 1046, 1050, 316 N.E.2d 177, 198.) Thus, we also find no merit to Stevens' contention that even assuming a waiver of strict compliance with the warranty provision he was entitled to setoffs for the cost of the repairs. Allowance of such setoffs would have resulted in Stevens not being required to pay Donna Harrington any money for her interest in the building. Thus, the Harringtons would in effect have given away their interest. We find that the trial court was justified in finding that such an inequitable result was precluded by Stevens' waiver of any right to setoffs under this warranty provision.

Stevens has contended that the trial court erred in believing the Harrington's account of this transaction rather than Stevens' account. Clearly, the directly conflicting versions of the parties presented a matter of credibility for determination by the trial court as the finder of fact.

In particular, Stevens notes some discrepancies in the account of the Harringtons as to when Donna Harrington signed the contract and the assignment of beneficial interest. Stevens testified that he delivered the contract to James Harrington on June 14, at which time Mickey Kay signed it. He did not witness Donna signing the contract and he testified he did not receive the contract with her signature until he took over the building (apparently after June 26). According to Stevens, Donna signed the assignment of beneficial interest in his presence on June 23 or 24. He was given the assignment at his home on June 26, when he gave James Harrington the $5,000.

James Harrington, who testified that his memory was "very bad" because he suffered from Parkinson's disease, gave confused testimony on the issue. At one point he testified that Donna signed both the contract and the assignment on the same day. However, he also testified that she signed the assignment "a few days later" after signing the contract. Subsequently, he testified that she signed the contract June 14 and the assignment June 26. However, he indicated he

was basing this on the dates on the instruments, also stating that Donna would know because "[h]er mind is better than mine."

Donna Harrington testified that it was her signature on the contract and the assignment. She recalled signing the contract in Stevens' presence, but could not remember for sure if she had signed another document. She testified that this was the only meeting she had with Stevens and recalled that it took place June 14.

■ The trial court evaluated all of this testimony and concluded that Donna had signed the original contract in Stevens' presence on June 26, some 10 days after Stevens testified he had learned of the building code violations. The court relied on this finding in part in concluding that Stevens had waived the warranty provision as he permitted Donna to sign the contract containing that clause after by his own admission he had learned that there were violations. We find that the trial court was justified in this finding of fact, based on Donna's testimony that the only time she signed any document in connection with the building was at one meeting in Stevens' presence, her identification of her signature on both documents, and the June 26 date on the assignment. A fact finder is not required to accept or reject the testimony of any witness *in toto* but may accept any portion of that testimony. (*People v. Warren* (1965), 33 Ill. 2d 168, 174, 210 N.E.2d 507, 510.) Furthermore, the testimony of James Harrington established that he showed Stevens the list of building code violations well before the contract was even drafted, thus bolstering the trial court's waiver determination.

The fundamental conflict in the testimony at trial was between Stevens and James Harrington. Stevens testified that after a written contract for the purchase of the building for $60,000 was prepared he learned of undisclosed building code violations and subsequently orally renegotiated a contract with the Harringtons for $5,000, paid in cash produced from a gun case without any receipt or other evidence of payment. James Harrington testified that he informed Stevens of the code violations before the contract was prepared. He denied that there was ever an oral substitute of contract and denied receiving any money from Harrington. The trial court made it clear in its finding of fact that it believed James Harrington and found Stevens' account to be preposterous and untrue. Thus we find no merit to Stevens' contention that the trial court denied him relief because he failed to establish that the Statute of Frauds was inapplicable. No such objection to Stevens' testimony was raised at trial by the plaintiffs. The court simply did not believe Stevens' testimony that such an oral agreement was made.

■ Stevens also contends that a judicial admission by James Harrington's counsel at a building court hearing established that Stevens had made a cash payment to Harrington. Stevens introduced a transcript of a building court hearing involving the same building at issue here. In the transcript, attorney Martin Tuchow informed the court that he was representing Kay Harrington and Kenneth Stevens, the new owner of the building. After evidence was adduced concerning continuing violations in the building and in response to the assistant corporation counsel's argument that in the past there had been repeated attempts to sell the building without repairs being made, Tuchow stated:

"The last time I spoke to [the Harringtons] they said they had a buyer for the building. I said, 'I'll not appear in court unless you have a bona fide buyer and the sale handled properly by a law firm.'

It has been done and they have entered into an agreement with Mr. Stevens, has purchased and finally they have somebody who made a proper purchase, put money down. The prior purchasers bought it on air and when they buy a building air, you are not going to do anything with the building.

Mr. Stevens put cold cash down to purchase this building and he is going to proceed and already proceeded to work on this particular building."

Stevens construes this to be a judicial admission by the Harringtons' attorney that Stevens had paid them money for the building. We reject this contention on two grounds. Because Tuchow was representing Stevens as well as the Harringtons at the hearing, Stevens cannot now rely on the statement of his own prior attorney as a judicial admission on behalf of a part opponent. Secondly, the statement itself is ambiguous. During the building court hearing Tuchow proferred to the court a signed contract, apparently the June 14 contract at issue here. That contract contains a representation that Stevens had placed $10,000 in earnest money with defendant Thomas M. Lawlor. Tuchow's reference to "cold cash down" could well have been made in reliance on the contractual representation. Given this context, we find that the statement cannot reasonably be construed to constitute the judicial admission Stevens asserts it to be. A judicial admission cannot be a matter of speculation or inference, and it must be given a meaning consistent with the context in which it is found. *Vincent v. Wesolowski* (1967), 87 Ill. App. 2d 477, 480-81, 232 N.E.2d 120, 122-23.

■ Stevens also contends that the trial court's credibility determination was affected by its erroneous exclusion of certain exhibits.

The four exhibits in question were a list of building code violations in other buildings in which James Harrington had an interest, pleadings in an action by a fuel company against Harrington, a copy of a housing court action against Harrington on another property, and orders relating to Harrington's separation from his wife. These exhibits were far afield from the issues before the court. In spite of this Stevens concedes that the court permitted examination of James Harrington concerning the matters contained in the documents. Because the admission of these exhibits would have been merely cumulative, we find no prejudice to Stevens in their exclusion. *Goldstein v. Scott* (1982), 108 Ill. App. 3d 867, 879, 439 N.E.2d 1039, 1048.

Stevens contends that plaintiffs' claim should have been barred by *laches*. The contract at issue was executed in June 1975. According to Stevens, James Harrington demanded money from him in late summer of 1976, a demand which Stevens rejected. In October 1976 Donna Harrington filed a complaint for specific performance or rescission. She voluntarily nonsuited that complaint and filed a Federal action which was dismissed April 30, 1979. The instant suit was filed June 1979.

■ *Laches* is established by a showing of such neglect or omission to assert a right, taken in conjunction with a lapse of time or more or less duration and other circumstances causing prejudice to an adverse party, as will operate to bar relief in equity. (*Pyle v. Ferrell* (1958), 12 Ill. 2d 547, 552, 147 N.E.2d 341, 344.) Determination of whether to apply the doctrine depends on the facts of each case and is a matter within the sound discretion of the trial court. (*Schroeder v. Schlueter* (1980), 85 Ill. App. 3d 574, 576, 407 N.E.2d 204, 206.) In this cause, the initial demand for payment was made about one year after the contract was signed. Stevens can hardly claim to have been prejudiced by the subsequent trial delay, as by his own testimony he was able to convert a dilapidated building into one worth up to $1.75 million with his investment of $800,000. The relief ultimately obtained by the plaintiffs was only payment of the $30,000 contract price, as adjusted by setoffs and interest. Stevens retained the building. Under these circumstances, we find no abuse of discretion in the trial court's refusal to bar the action under the doctrine of *laches*.

■ Stevens' final contentions are that the award of prejudgment interest was improper and in any event should not have been computed on the basis of compound interest. The trial court determined that after the computation for setoffs for Stevens' payment of outstanding utility bills, real estate taxes, and trust fees (stipulated to by plaintiffs), plaintiffs were entitled to $10,975.70 of the $30,000 origi-

nally due them under the contract. The court then determined that plaintiffs were entitled to interest on the balance at the rate of 9% compounded annually. The court also awarded plaintiffs certain fire loss proceeds, an award not specifically contested by Stevens on appeal.

Stevens contends that prior to the court's determination of setoffs at the conclusion of trial the balance due plaintiff was unliquidated and therefore prejudgment interest could not be awarded. But the trial court, in response to the same argument at the hearing on Stevens' motion of a new trial, specifically held that this was not prejudgment interest, but rather was based on the contract, which provides for 9% interest on the $60,000 balance due the sellers. The interest rate of 9% was therefore properly awarded on the basis of the agreement of the parties. (*Ochoa v. Maloney* (1979), 69 Ill. App. 3d 689, 695, 387 N.E.2d 852, 855.) However, we agree with Stevens' contention concerning compound interest. The law does not favor compound interest (interest on interest), although the parties may specifically agree to such a computation in the absence of a statutory bar. (47 C.J.S. *Interest & Usury* sec. 6 (1982).) In the absence of such an agreement, interest will be computed so as to avoid the payment of compound interest. (23 Ill. L. & Prac. *Interest* sec. 46 (1979).) Here, the contract merely specified that interest would be at the rate of 9%, and nothing in the record supports a finding that compound interest was intended. (*Braden v. Weinert* (1981), 97 Ill. App. 3d 929, 938, 423 N.E.2d 1326, 1333.) Accordingly, we vacate the trial court's award and remand the cause solely for entry of an award based on the computation of interest at the rate of 9% simple interest per year.

The judgment of the trial court is affirmed in part and vacated in part and the cause remanded for entry of a judgment based on 9% simple interest per year.

Affirmed in part; vacated in part and remanded.

MEJDA, P.J., and SULLIVAN, J., concur.