HOLLY WHALEN, Plaintiff, v. K MART CORPORATION *et al.*, Defendants-Appellees (Schostak Brothers, Inc., *et al.*, Third-Party Plaintiffs and Counterplaintiffs-Appellants; Martin Cement, Inc., *et al.*, Third–Party Defendants-Appellees).

First District (2nd Division)   No. 87—0437

Opinion filed February 2, 1988.

Algimantas Kezelis and Russell P. Veldenz, both of French, Rogers, Kezelis & Kominiarek, P.C., of Chicago, for appellants.

Stephen E. Sward and Charles A. LeMoine, both of Rooks, Pitts & Poust, and Michael D. Huber, Barry L. Kroll, Richard W. Schumacher, and Lloyd E. Williams, Jr., all of Williams & Montgomery, Ltd., both of Chicago, for appellees.

JUSTICE BILANDIC delivered the opinion of the court:

The plaintiff, Holly Whalen, brought an action under the Struc-

tural Work Act against the general contractor, Schostak Brothers, Inc., K mart and the landowners. (Ill. Rev. Stat. 1985, ch. 48, par. 60 *et seq.*) The general contractor and the landowners, as third-party plaintiffs (hereinafter collectively referred to as Schostak), filed a third-party complaint against A. W. Christianson & Sons, Inc., the painting subcontractor, for contribution and indemnity based on Christianson's agreement to procure insurance naming third-party plaintiffs as an insured. They also filed a counterclaim against Martin Cement Company, the cement subcontractor, for contribution and indemnity based on Martin's agreement to procure insurance naming the general contractor and landowners as an insured. The subcontractors moved to dismiss the third-party complaint and counterclaim pursuant to section 2—619 of the Code of Civil Procedure, alleging that the general contractor and landowners waived the contractual insurance requirement. (Ill. Rev. Stat. 1985, ch. 110, par. 2—619.) The trial court sustained the motion and dismissed the third-party complaint and counterclaim with prejudice. This timely appeal followed.

The subcontracts with Christianson and Martin were drafted by Schostak, the general contractor. The "Supplemental Subcontract Conditions," involved in this appeal, are identical. They state:

"SECTION 10. The *Subcontractor shall not commence work under this Subcontract until he has obtained all insurances required by the General Conditions and as hereinafter set forth and certificates of insurance delivered to the Contractor.* All policies or certifications of insurance to be furnished by Subcontractor shall provide that the insurance cannot be cancelled or modified until the expiration of twenty (20) days after receipt of written notice thereof by the Contractor."

"SECTION 12. The subcontractor agrees to indemnify, save harmless and defend the contractor and owner *from any liability for damages to any person or property upon, or at, or about the development that may arise as a result of or in connection with the work hereunder and the Subcontractor agrees to procure at his own expense, before the commencement of the work comprehensive general liability including Contractors protective liability insurance, completed operations and contractual liability insurance* and automobile liability insurance including the ownership, maintenance and operation of any automotive equipment owned, hired and non-owned *for the benefit of the contractor and owner, in the sum of Two Hundred Fifty Thousand ($250,000) Dollars for damages resulting to one person and Five Hundred Thousand ($500,000) Dollars for dam-*

*age to persons resulting from one occurrence and One Hundred Thousand ($100,000) Dollars for damages to property arising out of each occurrence, and to keep such insurance in force until the construction of development is fully completed, and to immediately and before commencing work deliver such policy or policies or certificates of insurance to the Contractor."*

"SECTION 15. The Subcontractor agrees to indemnify and hold the Contractor harmless from all claims, losses, expenses or liability from the payment of:

\* \* \*

\*\*\* [A]ll the insurance required to be furnished by Subcontractor under this agreement shall be in a company or companies which are satisfactory to the Contractor and/or Owner. Subcontractor agrees to obtain and maintain the above-described insurance during the entire period of this agreement. *Evidence of all insurance indicated within this Paragraph 12 shall be furnished to Contractor and/or Owner in writing and shall indicate that Contractor and/or Owner are additional or co-insured parties. No payments will be made until necessary proof of insurance has been made."* (Emphasis added.)

In substance, the affidavits in support of Martin's and Christianson's section 2—619 motions to dismiss state that the general contractor did not insist upon the respective subcontractor's compliance with the contractual insurance requirements of their respective subcontracts. Both subcontractors performed under their contracts and were paid in full after the date of plaintiff's accident. Schostak and the landowners did not submit any counteraffidavits.

The trial court dismissed the general contractor's and landowners' third-party complaints, and counterclaims with prejudice on the grounds that they waived their rights to enforce the insurance provisions of their subcontracts with Martin and Christianson. The orders were made final and appealable pursuant to Illinois Supreme Court Rule 304. 87 Ill. 2d R. 304.

I

The first issue on appeal is whether the trial court properly found that Schostak waived any breach of contract claims against the subcontractors.

The express language of the contracts shows that the subcontractors agreed to obtain insurance before commencement of any work. Proof of insurance was to be submitted to Schostak for approval prior to any performance and prior to any payment.

A condition precedent is a condition that must be performed before the contract becomes effective or which is to be performed by one party to the existing contract before the other party is obligated to perform. (*Lyntel Products, Inc. v. Alcan Aluminum Corp.* (1981), 107 Ill. App. 3d 176, 180, 437 N.E.2d 653.) In the case at bar, the subcontract plainly and unambiguously states that "[t]he Subcontractor shall not commence work under this subcontract until he has obtained all insurance required" and "[n]o payments will be made until necessary proof of insurance has been made." Thus, obtaining the required insurance was a condition precedent to commencement of work and a condition precedent to receiving payment.

Parties to a contract have the power to waive provisions placed in the contract for their benefit and such a waiver may be established by conduct indicating that strict compliance with the contractual provisions will not be required. (*Harrington v. Kay* (1985), 136 Ill. App. 3d 561, 563-64, 483 N.E.2d 560.) An implied waiver of a legal right may arise when conduct of the person against whom waiver is asserted is inconsistent with any other intention than to waive it. 136 Ill. App. 3d at 564.

Waiver is either an express or implied voluntary and intentional relinquishment of a known and existing right. (*National Tea Co. v. Commerce & Industry Insurance Co.* (1983), 119 Ill. App. 3d 195, 204-05, 456 N.E.2d 206, *appeal denied* (1984), 99 Ill. 2d 530.) The determination as to what facts are sufficient to constitute waiver is a question of law. (*Kitsos v. Terry's Chrysler-Plymouth, Inc.* (1979), 70 Ill. App. 3d 728, 388 N.E.2d 1054.) An analysis of whether there was in fact a waiver of contractual provisions focuses on the intent of the nonbreaching party. If he has intentionally relinquished a known right, either expressly or by conduct inconsistent with an intent to enforce that right, he has waived it and may not thereafter seek judicial enforcement. *Saverslak v. Davis-Cleaner Produce Co.* (7th Cir. 1979), 606 F.2d 208, 213, *cert. denied* (1980), 444 U.S. 1078, 62 L. Ed. 2d 762, 100 S. Ct. 1029, citing *Pierce v. MacNeal Memorial Hospital Association* (1977), 46 Ill. App. 3d 42, 52, 360 N.E.2d 551; 5 S. Williston, Contracts §678 (3d ed. 1961 & Supp. 1979).

A party to a contract may not lull another into a false assurance that strict compliance with a contractual duty will not be required and then sue for noncompliance. (*Saverslak,* 606 F.2d at 213, 214 n.13 (applying Illinois law).) While nonaction by both parties constitutes a waiver and mutual negation of that particular provision, the rest of the contract remains in force where the parties, by their acts and statements, show that they consider the agreement to retain its

vitality. *Life Savings & Loan Association of America v. Bryant* (1984), 125 Ill. App. 3d 1012, 467 N.E.2d 277, citing *Christopher v. West* (1951), 409 Ill. 131, 98 N.E.2d 722.

■ In the case *sub judice*, it is undisputed that Schostak drafted the contracts. The requirement that proof of insurance be submitted before the subcontractors could commence work and be paid was clearly for Schostak's benefit. Schostak's argument that it didn't know Martin and Christianson failed to obtain insurance until Schostak asked Martin and Christianson to defend this lawsuit is not persuasive. Schostak is presumed to know those things which reasonable diligence on its part would bring to its attention, namely, the absence of proof of insurance. (See *Vargas v. Esquire, Inc.* (7th Cir. 1948), 166 F.2d 651, 654, *cert. denied* (1948), 335 U.S. 813, 93 L. Ed. 368, 69 S. Ct. 29.) The record shows that Schostak never demanded any proof of insurance; both Martin and Christianson completed their performance under the contract; and both were paid in full for their services.

We, therefore, conclude that the trial court did not err when it determined that Schostak waived its claim for breach of contract against the subcontractors.

## II

■ Next, Schostak contends that the trial court erred in granting the subcontractors' section 2—619 motions to dismiss because a disputed question of fact existed regarding the waiver. Schostak argues that its failure to insist on compliance by the subcontractors can be interpreted as ignorance of the noncompliance. Schostak concludes that without proof of its knowledge that the subcontractors did not comply with the insurance requirement, there could be no waiver. We disagree. A motion brought under section 2—619 provides for involuntary dismissal of a cause of action based on certain defects or defenses. The section provides:

> "That the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim." (Ill. Rev. Stat. 1985, ch. 110, par. 2—619(a)(9).)

Additionally:

> "If, upon the hearing of the motion, the opposite party presents affidavits or other proof denying the facts alleged or establishing facts obviating the grounds of defect, the court may hear and determine the same and may grant or deny the motion. If a material and genuine disputed question of fact is raised the court may decide the motion upon the affidavits and evidence offered by the parties ***." (Ill. Rev. Stat. 1985, ch.

110, par. 2—619(c).)

Where the pleadings before a court fail to raise an issue of material fact, or where material fact issues are refuted by affirmative matter, the motion is properly granted. (*Ralston v. Casanova* (1984), 129 Ill. App. 3d 1050, 1055, 473 N.E.2d 444.) The court may, in its discretion, decide questions of fact upon hearing the motion. *Consumer Electric Co. v. Cobelcomex, Inc.* (1986), 149 Ill. App. 3d 699, 501 N.E.2d 156.

■ Martin and Christianson raised the affirmative defense that Schostak waived any breach of their failure to obtain insurance because Schostak allowed them to commence work and made full payment to both subcontractors upon completion of their duties. Both Martin and Christianson submitted affidavits to that effect with their motions. Schostak did not submit any counteraffidavits to rebut the affiants' statements. There is no factual support of Schostak's argument that it did not have knowledge of the subcontractors' failure to comply with the insurance requirement. Their failure to challenge Martin's and Christianson's affidavits constitutes an admission of the facts set forth therein. (*Myers v. Centralia Cartage Co.* (1981), 94 Ill. App. 3d 1139, 419 N.E.2d 465.) Thus, Schostak failed to raise a disputed question of fact.

Schostak would have us create the disputed question of fact by reading into the contract the fact that Schostak's failure to insist on compliance was caused by its lack of knowledge of the noncompliance. Under the facts of this case, we will not raise by implication or interpretation facts which should have been affirmatively stated in a counteraffidavit. Schostak drafted the contract. The provisions at issue are in the contract for the benefit of Schostak. They are presumed to know those things which reasonable diligence on their part would bring to their attention, namely, the absence of proof of insurance. See *Vargas v. Esquire, Inc.* (7th Cir. 1948), 166 F.2d 651, 654, *cert. denied* (1948), 335 U.S. 813, 93 L. Ed. 368, 69 S. Ct. 29.

We, therefore, conclude that a disputed issue of fact did not exist.

### III

Schostak contends that other provisions of the subcontracts negated its waiver of insurance requirement and, therefore, the trial court erroneously dismissed its action against the subcontractors. It directs our attention to general provisions which are commonly referred to as "boilerplate."

■ It is well established that in a contract in which there are general and specific provisions, the specific provisions control. *Farmers & Mechanics Bank v. Davies* (1981), 97 Ill. App. 3d 195, 422

N.E.2d 864; *Ohio Casualty Insurance Co. v. Tyler* (1980), 85 Ill. App. 3d 410, 407 N.E.2d 77.

Since the issue is whether Schostak waived its rights, the test is simply whether it intentionally relinquished a known right. The specific contractual provisions show that Schostak held a contractual right to demand proof of insurance from the subcontractors. It also had the right to prevent performance and withhold payment until such proof was submitted. Schostak continued to hold this right during the entire contractual period. During that period, Schostak "silently" permitted the work to continue to completion and then paid both subcontractors in full. Therefore, Schostak's silent acquiescence ripened into an intentional relinquishment of its right to enforce the specific substantive contractual provisions. (See *Saverslak v. Davis Cleaver Produce Co.* (7th Cir. 1979), 606 F.2d 208, 214, *cert. denied* (1980), 444 U.S. 1078, 62 L. Ed. 2d 762, 100 S. Ct. 1029.) Accordingly, the broad, general boilerplate provisions do not negate Schostak's waiver. The trial court properly dismissed the breach of contract claims on the basis of waiver.

## IV

■ Christianson asserts on appeal, as an alternative ground for dismissal of count III, that the trial court should have granted its section 2—615 motion to dismiss for failure to state a cause of action. Since Christianson did not cross-appeal from that finding, we have no power to review it. (*Zettel v. Paschen Contractors, Inc.* (1981), 100 Ill. App. 3d 614, 616, 427 N.E.2d 189, *cert. denied* (1982), 88 Ill. 2d 555; and see, *Rowan v. Novotny* (1987), 157 Ill. App. 3d 691, 510 N.E.2d 1111.) Absent a notice of cross-appeal, the matters sought to be reviewed are not preserved for review.

For the foregoing reasons the judgment of the circuit court of Cook County is affirmed.

Affirmed.

STAMOS and SCARIANO, JJ., concur.