977 F.2d 585
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
David DUTCHAK, Edward B. Goss, Edward Fremarek, et al., Plaintiffs,
v.
CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND,
Defendant-Appellee,
Appeal of Charles TURNER, Carl Reisinger, Harmon E. Fultz, et al.
David DUTCHAK, Chester J. Sullivan, et al., Plaintiffs,
v.
INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS,
WAREHOUSEMEN AND HELPERS OF AMERICA, a labor union, Local
742 International Brotherhood of Teamsters, Central States,
Southeast and Southwest Areas Pension Fund, et al.,
Defendants-Appellees.
Appeal of Homer E. WILLIAMS and Miriam Cressy, on their own
behalf and of all class members similarly situated
 Nos. 91-1278, 91-2099.
 United States Court of Appeals, Seventh Circuit.
 Argued Feb. 13, 1992.
Submitted Oct. 2, 1992.
 
 Before COFFEY and FLAUM, Circuit Judges, and ESCHBACH, Senior Circuit Judge.
 
 ORDER
 
 1
 These consolidated appeals relate to obligations undertaken by the Central States, Southeast and Southwest Areas Pension Fund (Fund) pursuant to a settlement agreement approved by the district court on November 10, 1987. The district court resolved all claims in favor of the Fund, see 1991 WL 61000, 1991 U.S.Dist. LEXIS 4989 (N.D.Ill. Apr. 17, 1991); 1991 WL 2473 1991 U.S. Dist. LEXIS 70 (N.D.Ill. Jan. 8, 1991), and the plaintiffs appeal.
 
 
 2
 The plaintiffs challenge the district court's disposition of their claims on four separate grounds. We have reviewed their contentions, and find them to be largely without merit. We affirm for the reasons expressed by the district court, whose memorandum decisions are attached as an appendix to this order. The plaintiffs also challenge the district court's criticism of the unclear manner in which they presented their claims to the court, as well as the court's admonition that further claims would not be entertained unless supported by thorough legal memoranda. The court's statements and admonition have no adjudicatory or injunctive effect, and hence are not appealable. The plaintiffs' challenge thereto is therefore dismissed for want of jurisdiction.
 
 APPENDIX
 
 3
 David DUTCHAK, et al., Plaintiffs,
 
 
 4
 v.
 
 
 5
 INTERNATIONAL BROTHERHOOD OF TEAMSTERS, et al., Defendants.
 
 
 6
 Chester J. SULLIVAN, et al., Plaintiffs,
 
 
 7
 v.
 
 
 8
 ESTATE of Frank E. FITZSIMMONS, et al., Defendants.
 
 
 9
 Nos. 76 C 3803 79 C 1725.
 
 
 10
 United States District Court, N.D. Illinois, E.D.
 
 
 11
 April 17, 1991.
 
 MEMORANDUM AND ORDER
 
 12
 MORAN, Chief Judge.
 
 
 13
 On January 4, 1991, we dealt with a number of contentions raised by Ohio counsel. He had raised additional claims with respect to two persons whose earlier claims were considered in the January 4th Memorandum and Order, but the later claims were not part of that consideration. We review them now. They are denied.
 
 
 14
 As we previously noted, what we can perhaps describe as the Ohio claims are not models of clarity. The arguments are exceedingly difficult to follow as they lump together contentions respecting individual claims, prior plans and the Settlement Agreement. Hence forward we will entertain no more Ohio claims unless they are supported by thorough memoranda filed by class counsel.
 
 
 15
 As best as we can determine, Miriam Cressy contends that her deceased husband should be credited with 20 years service; that any requirement that a participant who dies during covered employment have at least 20 years service before his survivor is entitled to full benefits is illegal; and that the Settlement Agreement provides for such benefits. Those are "apples and oranges" contentions. What credited service ought to be recognized has nothing to do with the Settlement Agreement. This court would require exhaustion if that individual dispute were before it, but it is not appropriately here. Further, the administration of the Settlement Agreement does not carry in its wake jurisdiction to rule upon the legality of earlier plan restrictions; it reaches only disputes about matters purportedly resolved by the Settlement Agreement. Finally, the Fund does not dispute that Miriam Cressy would, pursuant to the Settlement Agreement, be entitled to benefits that would, by virtue of the Settlement Agreement, have been payable to her husband but for his death. In that sense there is no disagreement requiring interpretation of the Settlement Agreement. To the extent that claimant contends that prior federal law required the payment of benefits irrespective of the Settlement Agreement, which at most provides a vehicle for payment, the matter is not before us. To the extent she contends that the Settlement Agreement itself requires payment of survivor benefits on behalf of any participant who died after ten years covered service and while in covered employment, she is in error. That is not a subject addressed in the Settlement Agreement.
 
 
 16
 The second claim, on behalf of Homer E. Williams, is that Williams worked in covered employment prior to 1976, when a three-year break-in-service provision was in effect, and also subsequent to the adoption of the 1976 plan, when a one-year break-in-service provision was in effect; that the Fund applied the one-year break-in-service provision to him; and that this violated the Settlement Agreement requirement that the most advantageous break-in-service rule be applied. Possibly he is right, but the sketchy presentation does not demonstrate that to be so. The Fund contends that exhaustion of administrative review should be required, but does not address the merits of the claim. Possibly exhaustion is futile, but we are not at all sure that is so. If the Fund is in error, that error can be rectified upon review. If it believes it is not in error, that review will at least provide a far more solid basis for judicial consideration than has been presented here.
 
 
 17
 Finally, the Ohio claimants, or at least some of them, want to appeal the January 4, 1991 denial of their claims, and possibly the denials here. They seek a Rule 54(b) determination. The Fund opposed because of the pendency of issues raised by class counsel and the pendency of the late Ohio claims. With the entry of this and related orders we believe there are no longer any matters pending before this court and, accordingly, the motion for a Rule 54(b) determination is denied as moot.
 
 
 18
 David DUTCHAK, et al., Plaintiff,
 
 
 19
 v.
 
 
 20
 INTERNATIONAL BROTHERHOOD OF TEAMSTERS, etc., Defendants.
 
 
 21
 Elizabeth DOLE, Secretary of Labor, Plaintiff,
 
 
 22
 v.
 
 
 23
 Estate of Frank E. FITZSIMMONS, et al., Defendants.
 
 
 24
 Chester J. SULLIVAN, et al., Plaintiffs,
 
 
 25
 v.
 
 
 26
 Estate of Frank E. FITZSIMMONS, Defendants.
 
 
 27
 Nos. 76 C 3803 78 C 342 and 79 C 1725.
 
 
 28
 United States District Court, N.D. Illinois, E.D.
 
 
 29
 Jan. 8, 1991.
 
 MEMORANDUM AND ORDER
 
 30
 MORAN, Chief Judge.
 
 
 31
 In an aftermath of the settlement of the Central States Pension Fund cases a number of issues have been raised respecting various participants in Ohio. The parties here and counsel for the Ohio participants agreed, we believe, with the concept that this court should entertain issues relating to the overall interpretation of the Settlement Agreement, while individual issues should be pursued wherever appropriate in the ordinary course. Accordingly, Ohio counsel Konrad Kuczak joined in as class counsel to pursue common issues. The concept of dealing with only common issues here is, however, simple to articulate and much more illusive when applied to specific claims. Perhaps the easiest way to proceed is to begin at the beginning, sorting out who is claiming what, and we do so.
 
 
 32
 Because of the way the issues arose we think the proper "beginning" is the November 13, 1989 Application for Enforcement of Terms of Consent Decree, wherein claims were advanced on behalf of Kenneth Stevens, Charles Turner, William R. Long, Carl Reisinger, Harmon E. Fultz and Homer E. Williams. There were earlier filings, but we believe that the scope of the claims (although not necessarily all the exhibits) was subsumed in the November 13, 1989 Application. Subsequently claims were also advanced for Miriam Cressy and David Harvey, and Richard Schwartz and John R. Brown were referred to as additional claimants.
 
 
 33
 1. Stevens brought an action for benefits in the Southern District of Ohio and the Fund defended in part on the ground that his claim rested upon a purported earned service credit, 1961 through 1966, which was pre-ERISA. His service, however, extended well past 1975 and the real issue, apparently, was whether or not he was entitled to credit for the 1961-1966 period. Judge Rubin has tried the case and has ruled that there was no break in service and that Stevens is entitled to benefits. His claim here, then, is moot and it is dismissed. The claim does, however, illustrate the difficulties of applying a "common issues" standard here, as it is clear from Judge Rubin's opinion that the real dispute was distinctly factual and individual.
 
 
 34
 2. Turner has an action pending in the same court. He was entitled to retroactive disability pension benefits under the Settlement Agreement and was paid $17,869.32. At the same time, apparently, the Fund recognized what it claimed was an earlier error in calculating the commencement date, which earlier date triggered a lesser monthly benefit. Turner contests the benefit reduction in the Ohio litigation, where the Fund insists he should first exhaust administrative remedies. He now contends that an insistence upon exhaustion of administrative remedies violates the Settlement Agreement. We disagree.
 
 
 35
 Whether or not administrative remedies must be exhausted under ERISA is largely discretionary, see Rochford v. Joyce, --- F.Supp. ----, No. 88 C 7776 (N.D.Ill., Nov. 16, 1990), and well it should be in view of the infinite variety of issues which may require resolution. That resolution can be furthered in most instances by further administrative consideration, and in other instances further consideration is a waste of time. The decision is case-driven and not susceptible to a general conclusion, although we have previously concluded that administrative exhaustion should be the norm under the Settlement Agreement. Turner's claim is dismissed without prejudice and, obviously, any intention of suggesting to another court how it should decide the exhaustion issue in the case before it.
 
 
 36
 Turner also raises an issue which does relate to an interpretation of the Settlement Agreement and could have more than individual applicability. The Fund denied him disability benefits for one month because he had been employed (and, therefore, obviously not disabled) that month. He contends that violates Article III D2 of the Settlement Agreement. We do not understand that provision to require disability payments during periods of non-disability. Rather, it was to avoid the Catch 22 situation by which a participant who was compelled to work because he had no benefits would thereafter be told he was not entitled to benefits because he had worked.
 
 
 37
 3. As best as we can tell (and, we have great difficulty in characterizing many of plaintiffs' contentions), Long contends that the Plan incorrectly characterized his circumstances as relating to a "gaining age" policy rather than to "break in service" provisions; he indicates that a magistrate agreed with him and he speculates that others may have faced similar situations. But now the Plan has granted, apparently, the relief Long sought. Even if his claim related to the Settlement Agreement--and we are not even sure that is so--we fail to see what general applicability there may be or what interpretation of what specific provision of the Settlement Agreement is being requested. Long's claims are denied without prejudice.
 
 
 38
 4. Reisinger presents a claim that he is entitled to compound interest upon the lump sum settlement he received as a result of the Dutchak settlement. The Plan pays simple interest and contends that is the method authorized, or at least an appropriate method, under the Settlement Agreement. Clearly that is an issue common to many of the beneficiaries of the settlement. For example, the resolution of that issue affects Turner as well.
 
 
 39
 The Settlement Agreement provides that retroactive benefits "shall include interest thereon at the rate of 6 per cent per annum from the date the benefits would have been due had the Plan as amended by this Agreement then been in effect." Plaintiffs agree that Illinois law controls in the absence of a contrary choice of law (and Illinois law provides for simple interest, Harrington v. Kay, 136 Ill.App.3d 561, 483 N.E.2d 560 (1st Dist.1985), but they argue that the Settlement Agreement looks to ERISA and general federal law as embodied in 28 U.S.C. § 1961. The Settlement Agreement is, however, a species of contract. There is nothing to suggest that ERISA controls the interest issue and, indeed, no one points to any ERISA provisions relating to rate of interest. 28 U.S.C. § 1961 provides for both a rate and for compounding, but the parties could not have been looking to that provision because they pegged the rate at 6 per cent. Payment of simple interest means, of course, that some class members have received less than they would if the interest was compounded, but inherent in any class settlement is the notion that some will benefit more than others, and it is the function of the fairness hearing to review the overall equities. Nor are we persuaded by the contention that lesser payments discriminate against class members in favor of non-class members. The Fund has a fiduciary obligation to all Plan participants, not just to some. We deny Reisinger's claim for compound interest.
 
 
 40
 That leaves, however, a reference to a claimed underpayment of interest to Paul B. Moyer, a claim which we do not understand and which the Fund has never addressed. More importantly, we do not understand how Moyer's concerns are before the court, as we are unaware of his becoming one of the class members whom counsel was seeking to represent here. This court has had some difficulty in sorting out the various claims (without the Fund's chart in its last filing we would be totally lost), but we have done the best we can. Having new claimants stray in informally is, however, too much.
 
 
 41
 5. Fultz and Williams contest the Special Hardship Appeal Committee rejection of benefits. Both contend that the Committee's reliance upon their purported failure to file for benefits promptly violates the Settlement Agreement, and Fultz further complains that the Committee also improperly relied upon the fact that he was not actually employed on his 47th birthday. Those contentions bring into question the Committee's interpretation of the Settlement Agreement and are, therefore, appropriate matters for consideration by this court. The pertinent provision is Article III 8c:
 
 
 42
 8. The Special Hardship Appeal Committee shall review appeals and grant benefits in those cases where substantial justice warrants deviation from the specific eligibility criteria of the Plan; these circumstances include, and must be substantially consistent with, the following categories:
 
 
 43
 (c) The Employee has 20 or more years of Covered Employment on or after his 47th birthday, and demonstrates confusion as to the application of Plan rules to those circumstances, by his reasonably contemporaneous application for benefits.
 
 
 44
 The Special Hardship Appeal Committee has interpreted that provision as requiring evidence of confusion by prompt application after leaving covered employment, and as requiring employment in covered employment on the participant's 47th birthday (or, even, pursuant to the Williams' decision, his 50th birthday). The claimants insist that Article III D2 of the Settlement Agreement disables the Committee from requiring an earlier "prompt" application because that provision mandates that the Committee presume that the applicant made prompt and timely application. They also contend that requiring employment in covered employment on the participant's 47th birthday is contrary to the plain language of the Plan.
 
 
 45
 They are wrong with respect to the first contention but they may possibly be right with respect to the second. Article III D2 presupposes that the applicant would have been eligible by the terms of the Plan if the amendments had then been in place. Article III 8c presupposes that the amendments do not cause the applicant to be eligible by the amended terms but that special consideration should be given to a limited number of participants because they may have relied, in making earlier employment decisions, upon a mistaken view of eligibility--a mistaken view to which the Plan may have contributed. This court does not recall the full history of the reasons for the provision, if it ever knew, but we did understand that some may have left covered employment before eligibility at age 50 in the mistaken view that they were then eligible for a pension, and the provision requires a then reasonable contemporaneous application as evidence of that confusion. Any other interpretation ignores the restrictive qualification of Article III 8c.
 
 
 46
 Being uncertain about the specifics of the reasons for the provision, we are not sure that the participant should have to have been in covered employment at age 47. The language of the provision is susceptible to the interpretation followed by the Committee but it is, perhaps, also susceptible to the interpretation that the participant had only to have 20 years of covered employment sometime between age 47 and age 50 and that credit for covered employment was not lost just because it occurred prior to age 47. If so, it assumes that a break in service of more than three years just prior to age 50 is immaterial, and the provision should have been written in terms of 20 years prior to the 50th birthday. We do not need to decide the question, however, because neither Fultz nor Williams submitted reasonably contemporaneous applications. Their claims are denied.
 
 
 47
 6. Harvey and Cressy contend that they have been denied access to files and in other respects treated in such a fashion as to violate the Settlement Agreement's mandate to follow ERISA procedures. Those claims do not, however, seek an interpretation of the Settlement Agreement since the Fund does not dispute its ERISA obligations but only their violation in those instances. The class members here have, generally, asserted claims both under the Plan and under the Settlement Agreement pursuant to the provisions of the Plan as amended. They have ERISA rights, generally, in both circumstances, and ERISA provides a means of redress if those rights have been violated. Those claims are denied.
 
 
 48
 7. We are unaware of any specific contentions by Schwartz and Brown.
 
 
 49
 8. Finally, these claimants seek publication of a comprehensive plan document setting forth the Settlement Agreement amendments. That subject was earlier discussed with class counsel and counsel for the Fund, and we did not then (about the time of the original application here) think that supplemental notice was necessary. Now considerable time has passed. The Fund has represented that it intended to incorporate an appropriate summary in its next SPD, which we think is desirable. That subject has now cropped up in issues raised by class counsel Lawrence Walner, but we are unsure of its status. For an update on that issue we turn to that class counsel and the Fund.
 
 
 50
 For the reasons stated, the claims herein advanced are denied.