(No. 34597.—

SAVERIO ARIOLA *et al.*, Appellants, *vs.* DANIEL M. NIGRO *et al.*, Appellees.

*Opinion filed March 20, 1958.*

HOFFMAN & DAVIS, of Chicago, (MAURICE L. DAVIS, ROBERT A. SPRECHER, and FRANK A. KARABA, of counsel,) for appellants.

BROWN, DASHOW AND LANGELUTTIG, and GUERINE AND GUERINE, both of Chicago, (ALBERT LANGELUTTIG, and JACK JOSEPH, of counsel,) for appellees.

MR. JUSTICE BRISTOW delivered the opinion of the court:

The parties to this appeal, who are adjoining land owners, were adversaries in a complaint and counterclaim filed in the circuit court of Cook County, each praying for injunctive relief and the recovery of damages from the other. After extensive proceedings the chancellor entered a decree making the following adjudications: (1) That the foundations, but not the walls, of the parties' respective buildings mutually encroach upon the land of the other, and that such encroachments are unworthy of remedy; (2) that plaintiffs enjoyed an easement along the west wall of their building, said easement projecting six inches over defendants' premises, for the maintenance of a gutter and downspouts; (3) that although defendants had wrongfully and permanently deprived plaintiffs of the benefits of their easement, plaintiffs were not en-

titled to equitable relief because they had been guilty of *laches* in asserting their right; (4) that plaintiffs were entitled to, and limited to, damages for the deprivation of their easement rights in an amount to be measured by the cost of furnishing a roof drainage system for plaintiffs' building "equivalent in all respects to, and as fully effective as, the roof drainage system enjoyed by plaintiffs immediately before the destruction thereof by the defendants." Following such findings, the decree re-referred the cause to the master for the purpose of ascertaining such damages, (with directions to report the same to the court together with the master's "conclusions of law and of fact, and recommendations,") reserved the question of costs pending the further report of the master, found that no other relief should be allowed, and dismissed both the plaintiffs' complaint and the defendants' counterclaim for want of equity. Plaintiffs have appealed from such decree contending they are entitled to relief by way of a mandatory injunction; defendants have cross-appealed reasserting their claims to both injunctive relief and the recovery of damages.

In a supplemental brief, requested when the cause was argued orally, defendants now concede the decree does not possess the requisites to make it final and appealable and suggest alternately that the appeal must be dismissed, by virtue of newly enacted section 50(2) of the Civil Practice Act (Ill. Rev. Stat. 1957, chap. 110, par. 50 (2),) because there has been no finding by the trial court that there is no just reason for delaying appeal until all the claims, rights or liabilites of the parties are decided. Plaintiffs, however, persist in their contention that the decree is final and appealable and argue that section 50(2) is inapplicable because multiple claims are not involved in this proceeding.

The practice of piecemeal appeals in cases of multiple claims or multiple parties, as well as the uncertainties at-

tending a precise definition of a final order in all cases, led to the enactment of section 50(2) of the Civil Practice Act with effect from January 1, 1956. Its provisions, which are patterned after Rule 54(b) of the Federal Rules of Civil Procedure, are as follows: "(2) If multiple parties or multiple claims for relief are involved in an action, the court may enter a final order, judgment or decree as to one or more but fewer than all of the parties or claims only upon an express finding that there is no just reason for delaying enforcement or appeal. In the absence of that finding, any order, judgment or decree which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not terminate the action, is not enforceable or appealable, and is subject to revision at any time before the entry of an order, judgment or decree adjudicating all the claims, rights and liabilities of all the parties." As pointed out by the advisory committee whose labors and recommendations preceded the enactment of the legislature, the theory of the provision is that judgments determining fewer than *all the matters involved* in an action shall not be appealable unless the trial court makes an express finding that there is no just reason for delaying appeal. Its advantages, according to the committee, are, first, that it avoids unnecessary appeals yet permits an appeal to be taken before final disposition of the case where the court considers an immediate appeal to be appropriate; and second, it enables litigants to determine with certainty, and thus avoid the consequences of failing to appeal, when a judgment adjudicating *fewer than all the matters involved* is appealable. (See: Smith-Hurd Anno. Stat., chap. 110, sec. 50(2), Joint Committee Comments; *Dickinson* v. *Petroleum Conversion Corp.*, 388 U.S. 507, 94 L. ed. 299.) The right to appeal is not negated, but whether an appeal from a piecemeal order must await final disposition is left to the trial court's discretion. Cf. *Winsor* v. *Daumit*, 179 F.2d 475, 478.

The Federal rule, as amended on December 27, 1946, effective March 19, 1948, provides as follows: "When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, the court may direct the entry of a final judgment upon one or more but less than all of the claims only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates less than all the claims shall not terminate the action as to any of the claims, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims." In its most recent pronouncements, found in *Sears, Roebuck & Co.* v. *Mackey,* 351 U.S. 427, 100 L. ed. 1297, and *Cold Metal Process Co.* v. *United Engineering & Foundry Co.* 351 U.S. 445, 100 L. ed. 1311, the United States Supreme Court has made it clear that the Federal rule does not apply to a single-claim action nor to a multiple-claims action in which all of the claims have been decided, and have stated that the rule is expressly limited to multiple-claims actions in which one or more but less than all of the multiple claims have been finally decided and found otherwise to be ready for appeal. Unquestionably it was the intention that section 50(2) should be similarly limited and we hold that it is. Controversy arises, however, as to the meaning to be given to the phrase "multiple claims." Based upon decisions construing the Federal counterpart, as well as an apparent interchange of the terms "claim" and "cause of action" appearing in section 33 of the Civil Practice Act, (Ill. Rev. Stat. 1957, chap. 110, par. 33,) plaintiffs insist that the word "claim," as it appears in section 50(2), is to be equated with "a cause of action." Accordingly, since Rule 10 of this court permits both legal and equitable relief to be sought in one

cause of action, (See: Ill. Rev. Stat. 1957, chap. 110, par. 101.10,) they reason that only a single "claim" is involved in their complaint, thus precluding the application of section 50(2) and relieving them of the obligation of securing an express finding that there is no just reason for delaying the appeal. Defendants, for their part, maintain that such a restricted meaning of the word "claim" was not intended, and represent the true intention of the committee as being to equate "claims" with the "rights and liabilities" to which the section refers.

An all-inclusive test for determining when multiplicity of claims exists has not been reached. Thus, under the Federal decisions at least, there has arisen a situation which has caused one writer to predict that "appellate review of whether an order below disposed of a 'claim' within the meaning of 54(b) may easily lead to as much uncertainty and confusion as does the problem of finality * * *. The old clash between the 'cause of action' and 'pragmatic' theories under the rule may be perpetuated." (62 Yale Law Rev. 263, 271.) Several decisions reflect the diverse views of our Federal courts. In *Reiser* v. *Baltimore & Ohio Railroad Co.*, 224 F.2d 198, 199, it was noted that "the ultimate determination of multiplicity of claims must rest in every case on whether the underlying factual bases for recovery state a number of different claims which could have been separately enforced." *Town of Clarksville, Va.* v. *United States*, 198 F.2d 238, 240, lays down this test: "A separate claim is said to be that which is entirely distinct from other claims involved in an action and which arises from a different occurrence or transaction." A more liberal view is presented in *Collins v. Metro-Goldwyn Pictures Corp.*, 106 F.2d 83, where it was held that copyright infringement and unfair competition arising from the same set of facts constituted two different claims because two different issues were involved. Still another court, in *Gold Seal Co.* v. *Weeks*, 209 F.2d 802, 807-08,

applied the "cause of action" test when it said: "The claim for relief referred to in Rule 54(b) is of course the claim for relief referred to in Rule 8(a) of the Federal Rules of Civil Procedure. As such it must show that the claimant is 'entitled to relief.' That is to say, the claim for relief must indicate the existence of a cause of action. By cause of action in this context is meant a claim that facts exist which, under our legal system, are recognized as entitling the claimant to judicial action in vindication of a right or in remedying a wrong."

Since section 50(2) encompasses only cases involving "multiple claims for relief," it is plaintiffs' contention that the same problems of finding a test for such claims confronts the bench and bar of this State. For their part they adopt the "cause of action" test and say that section 50(2) cannot be applied in this case. While it is our opinion that plaintiffs' adherence to such a test places them in the anomalous position of now contending that the decree appealed from is not final, (inasmuch as a substantial part of the single cause of action remains undecided in the court below; see dissenting opinion in *Sears, Roebuck & Co.* v. *Mackey,* 351 U.S. 427, 439, 100 L. ed. 1297, 1308,) we are in accord with defendants that an importation of the Federal distinctions between one and many claims introduces an unnecessary confusion. The language of section 50(2), as well as the comments of the committee which drafted it, indicate that a flexible and reasonable meaning was intended for the "claims" to which the section refers. The section itself speaks in terms of a final judgment or decree that adjudicates less than "all the claims *or* rights and liabilities," (emphasis supplied,) and upon two occasions the advisory committee comments that its provisions are to take effect when there is a final judgment adjudicating fewer than "all the matters involved." (Smith-Hurd Anno. Stat., Perm. Ed. chap. 110, sec. 50(2), Joint Committee Comments.) From the lan-

guage used, it would appear that the drafters were aware of the confusion and uncertainty attending a test for multiple claims under the Federal rule and expressly sought to avoid it. Most certainly it is not reasonable to assume there was any intention to engraft the uncertainties of Federal procedure in this area into our own.

Moreover, we may consider that section 50(2) was aimed at discouraging piecemeal appeals, in the absence of just reason, and at removing the uncertainty which existed when a final judgment was entered on less than all of the matters of controversy. That the problems are the same whether one, or more than one, cause of action is involved, is demonstrated by this case. Looking to the purpose of the section, in light of the committee's comments, we are of the opinion that section 50(2) was intended to apply wherever a final judgment or decree determines fewer than all the rights and liabilities at issue, and that a case such as the present is the very case for which the section was designed. As previously stated, the section is not one which either curtails or grants appellate jurisdiction, but is one which fixes the procedure in the trial court as to the conditions affecting the terms upon which an appeal may be taken in advance of a determination of the entire case. Accordingly, we hold that section 50(2) does apply and that the present appeal must fail for plaintiffs' omission to obtain an express finding that there is no just reason for delaying appeal until the matters reserved by the trial court have been decided.

Where there has been a failure to procure the express determination and direction commanded by Federal Rule 54(b), different procedures have been followed. In *Kaufman & Ruderman v. Cohn & Rosenberger*, 177 F.2d 849, an appeal was taken from an order dismissing one of two trademark claims. No question was raised as to the appealability and the Court of Appeals decided the appeal on its merits. In a supplemental opinion, however, the court

noted that the trial court had made no determination as required by Rule 54(b), and held that if such determination was made there within ten days it would be treated as made *nunc pro tunc* and the decision on appeal would stand, but that otherwise the appeal would be dismissed. (See also: *Vale* v. *Bonnett,* 191 F.2d 334; *Remington Rand Inc.,* v. *Societe Internationale,* 188 F.2d 1011.) Calling our attention to the provision of the Civil Practice Act which gives this court authority to "Give any judgment and make any order which ought to have been given or made," *etc.* (Ill. Rev. Stat. 1957, chap. 110, par. 92(1)(e),) plaintiffs urge we should either now decide the appeal on its merits and follow the procedure outlined above, or ourselves make the determination that no just reason for delay exists, and proceed to a determination of the merits. In other Federal cases, notably *Etten* v. *Kauffman,* 179 F.2d 302, *Republic of China* v. *American Express Co.,* 190 F.2d 334, and *Winsor* v. *Daumit,* 179 F.2d 475, the Court of Appeals has dismissed the appeal but has indicated that upon the entry of a new judgment and a proper determination under 54(b) the court would consider a second appeal on the same record as thus supplemented.

The latter procedure, we believe, is the more desirable and the more equitable, particularly in the formative stages of proceedings under section 50(2). Were we to hold otherwise and decide every nonconforming appeal, inadvertent or intentional, on its merits, the section would be reduced to a nullity and the advantage it was intended to create would become nonexistent.

For the reasons stated the appeal and cross appeal are dismissed. Should, however, the court below, upon the application of either the appellants or cross appellants, see fit to enter a judgment with an express finding that no just reason exists for delaying the appeal, and if the parties should again appeal from that judgment, this court would deem it unnecessary to have the parties reprint their

briefs and will decide the present appeal on the record as thus supplemented. We do not, however, express any opinion as to whether or not there is any "just reason" for appeal in advance of a determination of the controversies remaining. Cf. *Etten* v. *Kauffman,* 179 F.2d 302.

*Appeal dismissed.*