MATTHEW GEIER, Plaintiff, v. HAMER ENTERPRISES, INC., *et al.*, Defendants (Hamer Holding Group, Inc., Third-Party Plaintiff-Appellant; Coleman Floor Company, Third-Party Defendant-Appellee).

First District (5th Division)   No. 1—89—0420

Opinion filed February 21, 1992.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (D. Kendall Griffith, Karl N. Klockars, and Lynn D. Dowd, of counsel), for appellant.

O'Connor, Schiff & Myers, of Chicago (Elliot R. Schiff and John W. Grove, of counsel), for appellee.

JUSTICE GORDON delivered the opinion of the court:

After filing a prior opinion dismissing this cause for lack of jurisdiction, a petition for rehearing was filed by the appellant together with an *amicus* brief in support thereof. For the reasons which we shall discuss below, we have entered an order vacating and withdrawing our earlier opinion. We now file this new opinion in its stead in which we proceed to decide this appeal on its substantive merits.

Third-party plaintiff, Hamer Holding Group, Inc. (Hamer), appeals from an order of the circuit court dismissing count II of a third-party complaint filed against third-party defendant, Coleman Floor Company (Coleman). We affirm that judgment, after finding that appellate jurisdiction exists under Illinois Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)).

Coleman, a contractor, entered into a contract with Hamer to perform certain construction work on a building owned by Hamer. The contract includes section 11.1.4, which states that Coleman must provide the requisite certificate of insurance acceptable to the owner prior to the commencement of work. Rider A to the contract provides that Coleman shall maintain liability insurance for Hamer by adding Hamer as a named insured under Coleman's comprehensive general liability policy.

In the underlying suit, plaintiff Matthew Geier, an employee of Coleman, filed a Structural Work Act (Ill. Rev. Stat. 1989, ch. 48, par. 60 *et seq.*) and common law negligence action against Hamer. (The record does not indicate whether Hamer ever tendered its defense to Coleman.)

Hamer subsequently filed a two-count third-party complaint against Coleman. Count I seeks contribution from Coleman and alleges that Coleman was negligent in its failure to provide plaintiff with a safe place to work. Count II alleges that Coleman breached its contract by failing to procure insurance as required under rider A of the contract. Hamer seeks an amount equal to the "financial and economic losses" sustained as a result of the breach.

Coleman filed an affirmative defense to count II, alleging that Hamer had waived any breach of contract by allowing Coleman to commence and complete its work without requiring the certificate of insurance.

Based on the affirmative defense of waiver, Coleman filed a section 2—619 (Ill. Rev. Stat. 1989, ch. 110, par. 2—619) motion to dismiss count II of the third-party complaint. The trial court granted the motion to dismiss count II and certified that there was no just reason

for delaying enforcement or appeal, pursuant to Supreme Court Rule 304(a). 134 Ill. 2d R. 304(a).

OPINION

We originally filed a decision in this case where we raised the issue of appellate jurisdiction *sua sponte,* as is our responsibility. (See *Chicago Portrait Co. v. Chicago Crayon Co.* (1905), 217 Ill. 200, 75 N.E. 473; *Geocaris v. Bangs* (1968), 91 Ill. App. 2d 81, 234 N.E.2d 17.) We held that because of its contingent nature, the dismissal of a third-party action could not be appealed under Illinois Supreme Court Rule 304(a) (hereinafter Rule 304(a)) (134 Ill. 2d R. 304(a)), without a prior determination of the primary action from which the third-party action is derived. We reasoned that "[t]o determine at this juncture whether Hamer has a contingent right to damages under the breach of contract count would force us to decide an issue which may never have to be decided if Hamer prevails against the primary plaintiff."

Hamer filed a petition for rehearing, which is supported by an *amicus* brief filed by the Appellate Lawyers Association. The petition maintains that this court does have jurisdiction to hear the appeal of the dismissal of count II of the third-party complaint. Hamer argues that the dismissal of a third-party claim for contractual indemnity is both final and appealable under Rule 304(a). Hamer argues that permitting the appeal here would serve judicial economy by promoting settlement, and that by denying the appeal, a second trial may be necessary if this court later reverses the dismissal of the breach of contract claim. The *amicus* argues similarly, and additionally argues that our courts have "accepted [albeit without discussion or analysis] many Rule 304(a) appeals from the dismissals of contribution or indemnity claims while the underlying injury was still pending," and thus Illinois law reflects "years of prior contrary practice."

We grant the petition for rehearing to consider these issues.

In Illinois, the cases touching upon the appealability of orders dismissing contingent third-party claims are sparse and those few cases that do address it have not focused on these issues in any depth, but instead concentrate on other collateral questions raised such as the sufficiency of the language providing the necessary certification. In our reconsideration of the issues presented, we have looked again at the few Illinois decisions dealing with this matter, and we have then looked beyond the Illinois decisions and have researched the Federal decisions regarding the Federal appellate jurisdictional rule which is the progenitor and counterpart to the Illinois rule.

In *Hawthorn-Mellody Farms Dairy, Inc. v. Elgin, Joliet & Eastern Ry. Co.* (1958), 18 Ill. App. 2d 154, 151 N.E.2d 393, which we relied upon in our original opinion, the court dismissed an appeal from an order dismissing a third-party complaint for two reasons: the appropriate language finding no just cause for delaying enforcement or appeal was omitted by the trial court; and, even if the express finding had been included in the order, it would have been an abuse of discretion because an appeal would have been premature since the issues raised by the third-party action would become moot if the defendant/third-party plaintiff subsequently prevailed against plaintiff in the underlying action. "Either way we look at this appeal indicates it should be dismissed." (*Hawthorn-Mellody*, 18 Ill. App. 2d at 159.) "[W]e are not to anticipate the liability of the railroad [third-party plaintiff] by deciding its right to damages at the risk of a subsequent not guilty verdict in its favor; nor to determine the railroad's right to fees and expenses at the risk that later the third-party defendants would question on appeal the amount of allowance of fees and expenses." *Hawthorn-Mellody*, 18 Ill. App. 2d at 159.

Similarly, in *Markstahler v. Consumers Development & Construction, Ltd.* (1977), 52 Ill. App. 3d 918, 921, 368 N.E.2d 791, which we also cited in our original opinion, the court dismissed the appeal from a summary judgment in favor of the third-party defendant, notwithstanding the fact that the trial court had certified the order for appeal under Rule 304(a). The appellate court found no jurisdiction existed to hear the appeal because the third-party defendant's "liability is not determined but is conditioned upon the outcome of the underlying case."

In *Bohannon v. Joseph T. Ryerson & Sons, Inc.* (1959), 15 Ill. 2d 470, 476, 155 N.E.2d 585, the court dismissed an appeal from a directed verdict for the third-party defendant because there was no section 50(2) (now Rule 304(a)) finding, and the underlying liability of the original defendants had never been established. The court held[1] that the appeal was not ripe for decision. (*Bohannon*, 15 Ill. 2d at 476.) "Nothing in the record as it now stands shows that the underlying liability of Ryerson and Universal, upon which their third party claims were based, has been established." (*Bohannon*, 15 Ill. 2d at 475.)

---

[1] In view of the explicit language quoted from *Bohannon* regarding the court's concern with ripeness, we disagree with the historical and practice notes to Rule 304(a), which comment that the court in *Bohannon* "implied that the order would have been appealable had such a finding been incorporated in the order." Ill. Ann. Stat., ch. 110A, par. 304, Historical and Practice Notes, at 161 (Smith-Hurd 1985).

"The plaintiff's allegations of common law negligence and of ordinance violations have not been eliminated from the case. It is therefore impossible to know at this time whether the question that may one day have to be decided will relate to secondary liability at common law, under municipal ordinances, or under the Scaffold Act. Indeed, it is not certain on this record that any issue remains as to the claims of the third party plaintiffs against the third party defendants." *Bohannon*, 15 Ill. 2d at 475-76.

See also *Nogacz v. Proctor & Gamble Manufacturing Co.* (1975), 37 Ill. App. 3d 636, 347 N.E.2d 112 (dismissing appeal from summary judgment for third-party defendant and certified under Rule 304(a), because the summary judgment was not sufficiently final); *Aetna Casualty & Surety Co. v. Le Pes* (1972), 3 Ill. App. 3d 817, 818, 279 N.E.2d 184 (dismissal of third-party complaint not appealable, even with finding under Rule 304(a), because no "final judgment" exists since there had been no determination "on the merits" of liability of the third-party defendant); *Krambeer v. Canning* (1961), 33 Ill. App. 2d 208, 211, 178 N.E.2d 147 (dismissal of third-party complaint is not appealable, even with finding under section 50(2), because no "final order" had been entered).

*Cf. Fleetwood Development Corp. v. Northbrook Property & Casualty Insurance Co.* (1988), 172 Ill. App. 3d 83, 86, 526 N.E.2d 381, citing *Hawthorn-Mellody Farms Dairy, Inc.*, 18 Ill. App. 2d 154, 151 N.E.2d 393 (where the court dismissed the appeal for lack of jurisdiction where the trial court order dismissed the third-party contribution in tort action because there was no primary tort action pending. The court noted that although the primary tort action had previously been dismissed without a Rule 304(a) finding, that tort action could be reinstated at some point. Thus, the reason for dismissing the third-party complaint would no longer apply and defendant would once again have a third-party action against the third-party defendants).

However, in *Geocaris v. Bangs* (91 Ill. App. 2d at 84), the court held that a third-party complaint for indemnity, when accompanied by the appropriate finding, is final and appealable. The court distinguished *Hawthorn-Mellody Farms Dairy, Inc.* on the basis that no section 50(2) (now Rule 304(a)) finding was made in that case. Notably, however, the opinion contains no exposition or analysis of the appealability issues.

We further recognize that many other Illinois cases have entertained appeals from the dismissal of third-party actions, reciting that the appeal was had under Rule 304(a), without raising any issue regarding appealability or finality. (See, *e.g., Hayes v. Mercy Hospital &*

*Medical Center* (1990), 136 Ill. 2d 450, 557 N.E.2d 873; *Van Slambrouck v. Economy Baler Co.* (1985), 105 Ill. 2d 462, 475 N.E.2d 867; *Dixon v. Northwestern Publishing Co.* (1988), 166 Ill. App. 3d 745, 520 N.E.2d 932; *Smith v. Interstate Fire & Casualty Co.* (1977), 47 Ill. App. 3d 555, 362 N.E.2d 38; *Smart v. International Harvester Co.* (1975), 33 Ill. App. 3d 241, 337 N.E.2d 68; *Parsons v. Kuhne-Simmons Co.* (1966), 76 Ill. App. 2d 121, 221 N.E.2d 168.) However, the failure of these opinions to raise or discuss the issue at all leaves them with little precedential value in deciding whether appellate jurisdiction exists in this case. See *Steiner v. 20th Century-Fox Film Corp.* (9th Cir. 1955), 220 F.2d 105, 107 (analyzing finality under old Rule 54(b) of dismissal of one of several defendants, court found that similar cases which simply took for granted the applicability of Rule 54(b), without any analysis, were not persuasive); *In re Fiddler's Woods Bondholders Litigation* (E.D. Pa. 1984), 594 F. Supp. 594, 597 n.3 (cases involving dismissal of third-party complaints and certification for appeal under Rule 54(b) without any discussion of why court believed certification was proper, or with only a "cursory review of its reasons," are not persuasive).

Thus, Illinois law on the question of the appealability of third-party claims is sparse and fragmented. Some cases appear to preclude their appealability while others for the most part tacitly or by implication can be read to support their appealability. In none of these cases are all pertinent considerations fully discussed or articulated. It is therefore useful to look to the Federal decisions which have more completely and extensively analyzed the pertinent considerations under Federal Rule 54(b), the Federal counterpart to Illinois' Supreme Court Rule 304(a).

Under the Federal Rules of Civil Procedure, the language and policies underlying Rule 54(b) (28 Fed. R. Civ. P. 54(b) (permitting appeals from final judgments as to fewer than all of the parties or claims)) are substantially similar to Illinois Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)) (previously section 50(2) of the Civil Practice Act) (permitting appeals from final judgments as to fewer than all of the parties or claims). See Ill. Ann. Stat., ch. 110A, par. 304(a), Historical & Practice Notes, at 159, 161 (Smith-Hurd 1985) (Rule 304(a) "substituted *** the policy of Rule 54(b)" and "borrowed much of the language of Federal Rule 54(b)"); see also *Ariola v. Nigro* (1958), 13 Ill. 2d 200, 203, 148 N.E.2d 787 (section 50(2) is "patterned after Rule 54(b)"); *Veach v. Great Atlantic & Pacific Tea Co.* (1959), 22 Ill. App. 2d 179, 159 N.E.2d 833 (same).

Under Federal Rule 54(b), the United States Supreme Court in *Curtiss-Wright Corp. v. General Electric Co.* (1980), 446 U.S. 1, 7, 64 L. Ed. 2d 1, 11, 100 S. Ct. 1460, 1464, announced a two-step process of analysis to determine appealability. The Court explained that the trial court must "first determine that it is dealing with a 'final judgment'." *(Curtiss-Wright Corp. v. General Electric Co.*, 446 U.S. at 7, 64 L. Ed. 2d at 11, 100 S. Ct. at 1464.) Second, the court must exercise its discretion and determine whether there is any just reason for delaying the appeal, considering various factors which we discuss below. (*Curtiss-Wright Corp. v. General Electric Co.*, 446 U.S. at 7, 64 L. Ed. 2d at 11, 100 S. Ct. at 1464.) Under this process, therefore, the trial court must first determine the conceptual finality of the order and then—if conceptual finality is found to be present—it must determine through an exercise of balance and discretion whether to permit a piecemeal appeal from trial court orders involving fewer than all of the claims or parties in a single action.

With respect to the first step, the requirement of finality, the liberalization of joinder of claims "did not require relaxation of the standard of finality in the disposition of the individual adjudicated claims for the purposes of their appealability." *(Sears, Roebuck & Co. v. Mackey* (1956), 351 U.S. 427, 432, 100 L. Ed. 1297, 1304, 76 S. Ct. 895, 898.) Rule 54(b) "left unimpaired the statutory concept of finality prescribed by §1291." (*Sears*, 351 U.S. at 434, 100 L. Ed. at 1305, 76 S. Ct. at 899, citing 28 U.S.C. §1291 (1952).) The same principle has been followed in Illinois under Rule 304(a). See Ill. Ann. Stat., ch. 110A, par. 304, Committee Comments, at 157 (Smith-Hurd 1985) ("[I]t is not the court's finding that makes the judgment final, but it is the court's finding that makes this kind of a final judgment appealable").

It is crucial then that we first determine whether the dismissal of a third-party action is a final order.

While at common law finality was not enough for appealability, Federal Rule 54(b) provided that there could be finality with respect to fewer than all claims; it was not necessary to have finality with respect to the entire case. This concept of finality focused on individual claims. "It must be a 'judgment' in the sense that it is a decision upon a cognizable claim for relief, and it must be 'final' in the sense that it is 'an ultimate disposition of an individual claim entered in the course of a multiple claims action.'" *Curtiss-Wright Corp. v. General Electric Co.*, 446 U.S. at 7, 64 L. Ed. 2d at 11, 100 S. Ct. at 1464, quoting *Sears, Roebuck & Co. v. Mackey*, 351 U.S. at 436, 100 L. Ed. at 1306, 76 S. Ct. at 900.

Illinois apparently follows the same pattern with regard to finality. An order is "final" if it either terminates the litigation between the parties on the merits or disposes of the rights of the parties either on the entire controversy or on a separate and definite part of it. *Ariola v. Nigro*, 13 Ill. 2d at 207 (must be final judgment determining fewer than all the rights and liability at issue); *In re Estate of Semeniw* (1979), 78 Ill. App. 3d 570, 397 N.E.2d 64 (final judgment is one which finally disposes of rights of parties upon entire controversy or some definite and separate branch thereof). See also *Casati v. Aero Marine Management Co.* (1976), 43 Ill. App. 3d 1, 356 N.E.2d 826.

Predicated upon this definition of finality, the Federal courts have had no difficulty treating contingent third-party actions as they treat other cases involving multiplicity of claims. The Federal courts uniformly hold that a third-party dismissal is considered a final order under Rule 54(b). See *In re Licek Potato Chip Co.* (7th Cir. 1979), 599 F.2d 181, 184 (an "order dismissing a third-party complaint but leaving another claim pending is a paradigm of an interlocutory order subject to Rule 54(b)"), citing *Courembis v. Independence Avenue Drug Fair, Inc.* (D.C. Cir. 1963), 316 F.2d 658, 659; *Woodby v. Chesapeake & Ohio Ry. Co.* (6th Cir. 1965), 345 F.2d 668, 670 ("[I]t is now clear that an order dismissing a third-party complaint is not a final and appealable decision unless the district court has made the determination required by Rule 54(b)").

Under the Federal cases, the questions pertaining to contingency and mootness of a third-party dismissal were not to be treated as matters infecting its conceptual finality. Instead, the Federal courts have relegated the factors of contingency and mootness to the second step in determining the appealability of orders under Rule 54(b), *i.e.*, in considering whether the trial court's certification was an abuse of discretion. In effect, they have treated the question of mootness, which could render the appeal unnecessary, as they have treated the general questions concerning the avoidance of piecemeal appeals where the litigation is comprised of multiple claims or multiple parties.

■ As under the Federal practice, notwithstanding the contingent nature of a third-party action, in Illinois the dismissal of a third-party action can still be regarded as a "final judgment" in the sense that "such an order finally disposes of the claims of one of the parties in a multiple party suit, [and thus] it is clearly subject to rule 304." Ill. Ann. Stat., ch. 110A, par. 304, Historical & Practice Notes, at 161 (Smith-Hurd 1985) ("In many cases, it will be in the interest of justice to permit an appeal from the dismissal of the

third-party complaint to avoid the risk of having to try some of the same issues twice"); see also *Chicago, Milwaukee, St. Paul & Pacific R.R. Co. v. Harris Trust & Savings Bank* (1978), 63 Ill. App. 3d 1012, 1017-18, 380 N.E.2d 835 ("[I]t has been universally found that section 50(2) and therefore Rule 304(a), applies to orders dismissing third-party complaints" and cases hold that such orders are "not appealable unless the requisite finding of finality has been made"), citing *Bohannon v. Ryerson & Sons, Inc.*, 15 Ill. 2d 470, 155 N.E.2d 585, *Campbell v. Joslyn Manufacturing & Supply Co.* (1965), 65 Ill. App. 2d 344, 212 N.E.2d 512; *Krambeer v. Canning*, 36 Ill. App. 2d 428, 184 N.E.2d 747.

■ Notably, the express inclusion of the term "third-party claim" in Federal Rule 54(b) (which phrase is not included in Illinois' Rule 304(a)) should not be deemed to play into the question of whether a third-party dismissal is final. The third-party nature of the dismissed claim cannot destroy finality, any more than it could make final that which is not otherwise final. See *Towns v. Yellow Cab Co.* (1978), 73 Ill. 2d 113, 382 N.E.2d 1217 (the fact that an order states that there is no just reason to delay enforcement or appeal under Rule 304(a) does not make an otherwise nonfinal order appealable); *Metzger v. Fitzsimmons* (1988), 175 Ill. App. 3d 674, 529 N.E.2d 1179 (same); *Veach v. Great Atlantic & Pacific Tea Co.*, 22 Ill. App. 2d 179, 159 N.E.2d 833 (same).

We move on, then to the second step of the appealability determination. Even if the dismissal of a contingent third-party action can technically be considered a final order, it does not become appealable without weighing and considering its contingency and possible mootness, along with other factors discussed below. The United States Supreme Court explained this second step:

"Once having found finality, the district court must go on to determine whether there is any just reason for delay [of appeal]. *** The function of the district court under the Rule [54(b)] is to act as a 'dispatcher.' [Citation.] It is left to the sound judicial discretion of the district court to determine the 'appropriate time' when each final decision in a multiple claims action is ready for appeal. [Citation.] This discretion is to be exercised 'in the interest of sound judicial administration.' " (*Curtiss-Wright*, 466 U.S. at 8, 64 L. Ed. 2d at 11, 100 S. Ct. at 1464-65, quoting *Sears, Roebuck & Co. v. Mackey*, 351 U.S. at 435, 100 L. Ed. at 1306, 76 S. Ct. at 899.)

Thus, the trial court *"may,* by the exercise of its discretion in the interests of sound judicial administration, release for appeal final decisions upon one or more, but less than all, claims in multiple claims actions. The timing of such a release is, with good reason, vested by the rule primarily in the discretion of the District Court as the one most likely to be familiar with the case and with any justifiable reasons for delay. With equally good reason, any abuse of that discretion remains reviewable by the Court of Appeals." (Emphasis added.) (*Sears,* 351 U.S. at 437, 100 L. Ed. at 1307, 76 S. Ct. at 900-01.) "[T]he proper role of the Court of Appeals is not to reweigh the equities or reassess the facts but to make sure that the conclusions derived from those weighings and assessments are judicially sound and supported by the record." (*Curtiss-Wright,* 446 U.S. at 10, 64 L. Ed. 2d at 12, 100 S. Ct. at 1466.) "The question in cases such as this is likely to be close, but the task of weighing and balancing the contending factors is peculiarly one for the trial judge, who can explore all the facets of a case." *Curtiss-Wright,* 446 U.S. at 12, 64 L. Ed. 2d at 14, 100 S. Ct. at 1467.

Again, with respect to this second step in the appealability analysis, it is helpful to look to the Federal courts' approach.

The key to the exercise of this discretion lies in the nature of the third-party claim itself. (See *Luckenbach Steamship Co. v. H. Muehlstein & Co.* (2d Cir. 1960), 280 F.2d 755. See generally 6 J. Moore, W. Taggart & J. Wicker, Moore's Federal Practice, par. 54.36 (2d ed. 1992) (principles applicable in other multiple claim or multiple party cases apply in normal fashion to case involving dismissal of third-party claims).) The liability of the third-party defendant must be dependent on the liability of the third-party plaintiff to the original plaintiff, and thus, the outcome of the third-party action depends upon the outcome of the original action. *Ketcham v. Consolidated Rail Corp.* (1986), 146 Ill. App. 3d 196, 496 N.E.2d 1104.

It is the contingent or derivative nature of such claims, and the possibility that their disposition will be rendered moot on the determination of the primary action, which must be evaluated and balanced against competing factors to justify a certification of their appealability.

The discretion which Federal Rule 54(b) confers on a trial court is not absolute, particularly with respect to the certification of third-party actions for appeal. (See *Panichella v. Pennsylvania R.R. Co.* (3d Cir. 1958), 252 F.2d 452, 454.) The courts consider various

factors in determining whether the certification for appeal of a portion of a case is an abuse of discretion. These factors include:

"(1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in set-off against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like. Depending upon the facts of the particular case, all or some of the above factors may bear upon the propriety of the trial court's discretion in certifying a judgment as final under Rule 54(b)." (*Allis-Chalmers Corp. v. Philadelphia Electric Co.* (3d Cir. 1975), 521 F.2d 360, 364.)

Other factors include whether an appeal would eliminate unnecessary evidence, confine the issues, shorten the trial, save much expense to the litigants in connection with the preparation for trial and contribute to expediting the trial court's work. *Campbell v. Westmoreland Farm, Inc.* (2d Cir. 1968), 403 F.2d 939, 942-43.

The Federal appellate courts have actively monitored the exercise of discretion by the trial judges in their certification under Rule 54(b). The Federal appellate decisions have emphasized a "pragmatic approach focusing on severability and efficient judicial administration." (*Continental Airlines, Inc. v. Goodyear Tire & Rubber Co.* (9th Cir. 1987), 819 F.2d 1519, 1525, citing *Local P-171 v. Thompson Farms Co.* (7th Cir. 1981), 642 F.2d 1065, 1070-71; *Solomon v. Aetna Life Insurance Co.* (6th Cir. 1986), 782 F.2d 58, 62 (certification for appeal was abuse of discretion where adjudicated and pending claims are closely related and stem from essentially the same factual allegations); *McKibben v. Chubb* (10th Cir. 1988), 840 F.2d 1525, 1529 (upholding Rule 54(b) certification on basis that separate factual bases applied to third-party and primary actions); *Jack Walters & Sons Corp. v. Morton Building, Inc.* (7th Cir. 1984), 737 F.2d 698, 703 (appeal is "unencumbered by any facts bearing on the retained claim" in the trial court and thus appellate jurisdiction is proper); *Hayden v. McDonald* (8th Cir. 1983), 719 F.2d 266 (certification for appeal was abuse of discretion where adjudicated and remaining claims were closely related and based on same set of facts); *Morrison-Knudsen Co. v. Archer* (9th Cir. 1981),

655 F.2d 962, 965 ("A similarity of legal or factual issues will weigh heavily against entry of judgment under" Rule 54(b)); *Cullen v. Margiotta* (2d Cir. 1980), 618 F.2d 226, 228 (certification for appeal was abuse of discretion where adjudicated and pending claims are closely related and stem from essentially the same factual allegations); *New York v. Amro Realty Corp.* (N.D.N.Y. 1990), 745 F. Supp. 832, 840 (Rule 54(b) certification of order dismissing third-party complaint "clearly appropriate" where the claims are separable because "they involve at least some different questions of fact and law and could be separately enforced").) The Seventh Circuit Court of Appeals explained this approach:

> "The recent decisions of this court have experimented with a practical approach based on what we conceive to be the most important purpose behind Rule 54(b)'s limitations—to spare the court of appeals from having to keep relearning the facts of a case on successive appeals. The approach is: if the facts underlying different claims are different, the claims are separate for Rule 54(b) purposes. For if there are different facts (and of course different issues) consideration of the appeals piecemeal rather than all at once will not involve a duplication in the efforts required of the judges to prepare for argument in, and to decide, each appeal. The gains from forcing the consolidation of appeals will therefore be small and will be outweighed by the benefits of an immediate appeal in resolving the parties' rights with respect to a part of the controversy between them. By the same token, if there is a great deal of factual overlap between the decided and the retained claims, they are not separate, and appeal must be deferred till the latter are resolved." *Jack Walters & Sons Corp. v. Morton Building, Inc.*, 737 F.2d at 702.

See generally 6 J. Moore, W. Taggart & J. Wicker, Moore's Federal Practice, par. 54.33[2], at 54—194 (2d ed. 1992) (appellate decisions since *Curtiss-Wright* have adopted a more pragmatic approach).

Thus, a factor which plays a significant role in the present case is that the factual and legal bases of count II of the third-party claim are separate from the factual and legal bases of count I (tort contribution) and the bases of the primary action (Structural Work Act).

See *Continental Airlines v. Goodyear Tire & Rubber Co.* (notwithstanding possibility of mootness which would mean that Rule 54(b) certification is "ordinarily disfavored," court finds that the "matters disposed of by the partial summary judgments were suffi-

ciently severable factually and legally from the remaining matters" and thus Rule 54(b) certification was proper under the circumstances of that case).

Notably, some courts have used the separability factor to achieve the opposite result, *i.e.*, finding that the existence of separable claims suggests that no appeal should be taken. See, *e.g.*, *United States Fire Insurance Co. v. Smith Barney, Harris Uphan & Co.* (8th Cir. 1983), 724 F.2d 650, 652 (holding that certification for appeal was an abuse of discretion because the third-party complaint was totally distinct from the underlying action. "While some evidence might be relevant to both trials, we could not say that the two trials would be so similar that the interests of sound judicial administration require their consolidation"); *In re Fiddler's Woods Bondholders Litigation,* 594 F. Supp. at 598 (court refused to certify dismissal of third-party complaint for appeal under Rule 54(b) on the basis that the "issues raised in the third-party complaint are sufficiently distinct and severable" that resolution of them would "provide little, if any, guidance as to resolution of the" primary claims).

■ However, we find the better view, as expressed by the United States Supreme Court, is that the existence of separability favors appealability. Where the dismissed claims "can be decided independently of each other," that is, they are not "so inherently inseparable from, or closely related to" the remaining claims, then the trial court does not abuse its discretion in certifying that there exists no just reason for delay of the appeal. (*Sears*, 351 U.S. at 436, 100 L. Ed. at 1306, 76 S. Ct. at 900.) If the claims still pending are "severable from the claims which [have] been determined in terms of both the factual and the legal issues involved," such that no appellate court would have to decide the same issues more than once even if there were subsequent appeals, an immediate appeal of the adjudicated claims is proper. *Curtiss-Wright*, 466 U.S. at 9, 64 L. Ed. 2d at 11-12, 100 S. Ct. at 1465.

In the present case, we find that the entirely separate basis of count II from the remaining counts supports the trial court's exercise of discretion in certifying for appeal the dismissal order. The third-party contract count rests upon separate factual and legal bases than the tort counts in the primary action and in the third-party action.

Here the contract count involves the identification of the parties to the contract, an interpretation of the contract terms pertaining to procurement of insurance, and any additional evidence establish-

ing a waiver of that contract provision. In contrast, the tort counts concern the work being performed by the injured employee, and the facts surrounding his accident. Count II of the third-party action, therefore, does not involve the same evidence as the counts which remain pending. This supports the trial court's exercise of discretion in certifying for appeal the dismissal of count II.

Nevertheless, whether the issue being considered for Rule 54(b) certification is separate and distinct from remaining issues "will begin, rather than end, the district court's certification analysis." (*Corrosioneering, Inc. v. Thyssen Environmental Systems, Inc.* (6th Cir. 1986), 807 F.2d 1279, 1283, citing *Cold Metal Process Co. v. United Engineering & Foundry Co.* (1956), 351 U.S. 445, 452, 100 L. Ed. 1311, 1318, 76 S. Ct. 904, 908.) The court in *Corrosioneering* found that the claims certified for appeal were separate and distinct from the remaining issues in the case, and that such a conclusion supported the trial court's determination that the judgment should be certified for appeal. Nevertheless, the court went on to hold that the finding of a "separate and distinct" issue was an insufficient basis to support the Rule 54(b) certification where the possibility of mootness existed. (*Corrosioneering*, 807 F.2d at 1283.) The court explained:

> "For example, a 'separate and distinct' issue of contribution or indemnification would likely be unsuitable for Rule 54(b) certification if the related issue of liability, on which the contribution or indemnity would depend, was yet to be resolved in the district court, because a finding on the liability issue in the district court could moot the need for review of the question of contribution or indemnification." *Corrosioneering*, 807 F.2d at 1283.

Thus, the possibility of mootness due to the contingent nature of the third-party claim typically weighs heavily in the exercise of discretion in deciding whether to certify the dismissal of a third-party claim for appeal. Mootness is especially likely where a third-party claim is involved since, as discussed above, by its very nature a third-party claim is contingent and dependent upon the still undecided primary action.

In fact, one court went so far as to state that "[t]hird-party claims for indemnity for judgments that may never occur should seldom fall within the narrow exception of Rule 54(b)." (*United States Fire Insurance Co. v. Smith Barney, Harris Uphan & Co.*, 724 F.2d at 653, quoted in *In re Fiddler's Woods Bondholders Litigation*, 594 F. Supp. at 597, and *Continental Bank v. Caton* (D.

Kan. 1991), 136 F.R.D. 691.) Similarly, one commentator expressed the view that an abuse of discretion "is likely to be found *** where the order may be rendered moot by the subsequent course of the litigation, as in the case of a dismissal of the defendant's claim against an impleaded party before the defendant has been found liable to the plaintiff." Note, *Appealability in the Federal Courts*, 75 Harv. L. Rev. 351, 362 (1961), quoted in *Allegheny Airlines, Inc. v. LeMay* (7th Cir. 1971), 448 F.2d 1341, 1343.

Many Federal appellate cases have therefore found it was an abuse of discretion to certify third-party claims for appeal because of the potential mootness. For the same reason, Federal trial court cases have refused to certify third-party claims for appeal. But as noted parenthetically below, each such case is distinguishable, often because of remoteness or factually separable claims.

See, *e.g., Corrosioneering, Inc. v. Thyssen Environmental Systems, Inc.*, 807 F.2d at 1283-84 (holding that the trial court abused its discretion in certifying the judgment in favor of the third-party defendant for appeal under Rule 54(b) because "a finding on the liability issue in the district court could moot the need for review of the question of contribution or indemnification"; however, the court found an "absence of countervailing considerations supporting an immediate appeal" of the indemnity count); *United States Fire Insurance Co. v. Smith Barney, Harris Uphan & Co.*, 724 F.2d at 652 (abuse of discretion to permit appeal of third-party dismissal where there is a "grave concern of mootness"; however, court highlighted that plaintiffs had a particularly "difficult burden to demonstrate" any liability by defendant in the primary action); *Panichella v. Pennsylvania R.R. Co.*, 252 F.2d at 455 (abuse of discretion to permit appeal of summary judgment for the third-party defendant because if the primary plaintiff could not establish the liability of the primary defendant, the third-party action "which is presented on this appeal will become moot"; however, the factual and legal issues in dispute in the primary action were also the key to those in the third-party action and thus the two actions were insufficiently separate).

For trial court cases, see, *e.g., Department of Economic Development v. Arthur Andersen & Co.* (S.D.N.Y. 1990), 739 F. Supp. 804, 810 (dismissing a third-party complaint but refusing to certify the judgment for appeal under Rule 54(b) since the "same issues remain to be litigated against undismissed third-party defendants"; however, the dismissed causes of action all "revolve[d] around the same basic factual allegations as the surviving ones"); *Continental*

*Bank v. Caton,* 136 F.R.D. 691 (refusal to certify third-party dismissal for appeal due to mootness); *In re Fiddler's Woods Bondholders Litigation,* 594 F. Supp. 594 (same).

We have examined these cases carefully, along with the Illinois cases discussed above. In balance, we find that the considerations operating in those cases do not have the same force in the present case. While finding that the danger of mootness is a highly significant factor in the appealability of the dismissal of contingent third-party actions, we agree with Hamer and the *amicus* that in the present case other factors, including the separability factor already discussed, outweigh the danger of mootness.

Even if other factors tend to indicate an immediate appeal would not be proper, the United States Supreme Court has held that a trial court might nonetheless exercise its discretion and certify the appeal under Federal Rule 54(b) if the court found that the possibility of settlement, or some other factor, might be "a sufficiently important reason for nonetheless granting certification." (*Curtiss-Wright,* 466 U.S. at 11 n.2, 64 L. Ed. 2d at 11 n.2, 100 S. Ct. at 1465 n.2.) There, the Court held that even if there was a lack of separate claims, it could be offset, for example, by a "finding that an appellate resolution of the certified claims would facilitate a settlement of the remainder of the claims." *Curtiss-Wright,* 446 U.S. at 8 n.2, 64 L. Ed. 2d at 8 n.2, 100 S. Ct. at 1465 n.2.

■ Similarly, we agree with Hamer and the *amicus* that the immediate appeal of the dismissal of count II might very well facilitate a settlement of the remainder of the claims. Ascertaining the party who will ultimately be liable for any judgment entered in the underlying primary action may indeed have a catalytic impact upon possible future settlement negotiations.

In summary, we emphasize again that in another case involving the dismissal of a third-party action, certification for appeal under Rule 304(a) may be an abuse of discretion, particularly due to the possibility of mootness. As one Federal court noted in regard to Rule 54(b), "[t]he variety and number of factors which may be present in any one case highlights [*sic*] the importance of the [trial] court's evaluation and articulation of those factors leading to its grant of Rule 54(b) certification." (*Allis-Chalmers,* 521 F.2d at 365.) It is only after considerable analysis of the historical roots of Rule 304(a) and section 2—406(b), their Federal counterparts, and the particular factual setting of the present case, that we can conclude with certainty that the trial court properly exercised its discretion here.

Accordingly, we find that the trial court did not abuse its discretion when it included the Rule 304(a) language in the order dismissing the third-party complaint, and consequently appellate jurisdiction exists.

We go on, therefore, to consider the merits of the appeal.

Hamer contends that Coleman was required to maintain liability insurance during the performance of the agreement pursuant to section 11.1.5 of rider A to the contract. A motion to dismiss under section 2—619 of the Code of Civil Procedure is properly granted where the claim asserted is barred by affirmative matter avoiding the legal effect of or defeating the claim. Ill. Rev. Stat. 1989, ch. 110, par. 2—619(a)(9).

Here, section 11.1.4 of the contract provides:

"Certificates of Insurance acceptable to the Owner shall be filed with the Owner prior to the commencement of the Work. These Certificates shall contain a provision that coverages afforded under the policies will not be cancelled until at least 30 days prior written notice has been given to the Owner."

Section 11.1.5, included in rider A to the contract, provides:

"Contractor shall purchase and maintain during the performance of this Agreement the following insurance with companies rated Best Company A+ or better with the following limits as will protect the Contractor. The owner ***, the Architect, and any Engineers retained by the architect, their agents and employees from claims which may arise out of or result from or in connection with the Contractor's performance under the Contract, whether such operations be by the Contractor, or by any Subcontractor or by anyone directly or indirectly employed by any one of them, or by anyone for whose acts of them may be liable ***."

In construing a contract, the primary objective is to give effect to the intent of the parties at the time they entered into the contract. (*Gardner v. Padro* (1987), 164 Ill. App. 3d 449, 453, 517 N.E.2d 1131.) However, the parties may waive a provision placed in the contract for their benefit, including a condition precedent. (*Quake Construction, Inc. v. American Airlines, Inc.* (1990), 141 Ill. 2d 281, 565 N.E.2d 990; *Harrington v. Kay* (1985), 136 Ill. App. 3d 561, 563-64, 483 N.E.2d 560; *Swerdlow v. Mallin* (1985), 131 Ill. App. 3d 900, 904, 476 N.E.2d 464; *Grill v. Adams* (1984), 123 Ill. App. 3d 913, 463 N.E.2d 896.) Waiver is an express or implied voluntary and intentional relinquishment of a known and existing

right. (*Whalen v. K mart Corp.* (1988), 166 Ill. App. 3d 339, 519 N.E.2d 991.) Waiver is an equitable doctrine invoked to further the interests of justice whenever a party initially relinquishes a known right. (*Mollihan v. Stephany* (1977), 52 Ill. App. 3d 1034, 368 N.E.2d 465.) Waiver of a contractual provision may be established by conduct indicating that strict compliance with the provision will not be required. (*Harrington,* 136 Ill. App. 3d at 564.) The sufficiency of facts necessary to constitute waiver of a contractual provision is a question of law. *Whalen v. K mart Corp,* 166 Ill. App. 3d at 343.

In *Whalen v. K mart Corp.,* the court found that the general contractor and landowners had waived the subcontractor's contractual insurance requirement. (*Whalen,* 166 Ill. App. 3d at 342.) The contract provided that the "[s]ubcontractor shall not commence work *** until he has obtained all insurances required *** and certificates of insurance [are] delivered to the [c]ontractor." It also provided that the subcontractor "agrees to procure at his own expense, before the commencement of the work comprehensive general liability" insurance, and the subcontractor was "to immediately and before commencing work deliver such policy or policies or certificates of insurance to the Contractor." (Emphasis omitted.) (*Whalen,* 166 Ill. App. 3d at 341-42.) The court held that the general contractor and landowners waived this condition precedent to the subcontractor's commencing work and receiving payment upon completion. (*Whalen,* 166 Ill. App. 3d at 343.) The court stated:

> "If [a party] has intentionally relinquished a known right, either expressly or by conduct inconsistent with an intent to enforce that right, he has waived it and may not thereafter seek judicial enforcement." (*Whalen,* 166 Ill. App. 3d at 343.)

The contractual provisions here requiring the procurement of insurance are substantially similar to those in *Whalen.* We find that under the holding in *Whalen,* Hamer intentionally relinquished its right to rely on those sections of the contract.

Hamer maintains that *Whalen* does not apply here because the contract language there prohibited the commencement of work until all insurance had been obtained, while no such prohibition was contained in the contract between Hamer and Coleman. Instead, Hamer argues, "continuous action was required." Hamer urges us to find "separate and distinct obligations" in rider A's language requiring Coleman to maintain insurance during the project, and in section 11.1.4's language requiring a certificate of insurance prior to commencement of work. Hamer maintains that a "requirement

for a certificate of insurance is distinct from a subsequent requirement to procure and maintain insurance for the duration of the contract."

In *Whalen*, however, the contract similarly had a continuing obligation in that it provided that the required insurance could not be canceled or modified before the expiration of 20 days after receipt of written notice by the contractor. (*Whalen*, 166 Ill. App. 3d at 343.) We will not artificially separate the obligation to procure and maintain insurance under the contractual language here. Coleman could not "maintain" the insurance until it had initially procured the insurance.

Hamer also argues that Coleman should not be allowed to benefit from its own misconduct in failing to procure the insurance. However, as we have already stated, parties to a contract may waive provisions placed in the contract for their benefit. *Quake Construction, Inc. v. American Airlines, Inc.*, 141 Ill. 2d 281, 565 N.E.2d 990; *Community Convalescent Center of Naperville, Inc. v. First Interstate Mortgage Co.* (1989), 181 Ill. App. 3d 996, 1000, 537 N.E.2d 1162; *Harrington v. Kay*, 136 Ill. App. 3d at 563-64; *Lempera v. Karner* (1979), 79 Ill. App. 3d 221, 398 N.E.2d 224.

■ Thus, we hold that the trial court correctly found that Hamer waived any contractual obligation of Coleman to procure liability insurance by its failure to require Coleman to provide certificates of insurance prior to the commencement of work or prior to Coleman's being paid in full when it completed the job.

In conclusion, for the reasons stated above, we withdraw our previous opinion and file this opinion in its place. The judgment of the circuit court of Cook County dismissing count II of the third-party complaint is affirmed.

Judgment affirmed.

McNULTY, P.J.,* and MURRAY, J., concur.

---

*Justice Coccia heard the oral argument in this case. Following his retirement, Presiding Justice McNulty was substituted and has read the briefs and listened to the tapes of oral argument.